[Sac. No. 3769. In Bank.—August 10, 1925.]

In the Matter of the Estate of HANNAH L. HENDERSON, Deceased. ORRIN S. HENDERSON, Appellant, v. FRANCIS CUTTING, Respondent.

[1] WILLS—WRITINGS ON DIFFERENT PAGES OF SINGLE SHEET OF PAPER —CONSTRUCTION—HOLOGRAPHIC WILL.—Where a single sheet of paper was so folded as to make it consist of four pages, and the first page (which was entirely in the handwriting of the writer) contained a date, a request that the son-in-law of the writer have charge of the latter's affairs, bequests in a specified amount to the son-in-law and daughter of the writer, also a bequest of the residue to a granddaughter of the writer, and the signature of the writer at the end of said page, and the last page (which was also entirely in the same handwriting), after showing that the daughter was being addressed, and after declaring that the writer's grandchildren "are doing well for themselves," contained the statement that the writer was thinking of her dear son "Orrin," and also a request that "so I ask you as a mother, to think of me as his mother, if you can, to send him a little gift from me say $50 or a $100 as you can," and was signed "From a Loving Mother," the writings so appearing on the first and last pages of said single sheet of paper constitute one instrument and a harmonious holographic will.

[2] ID.—SIGNATURE—SUFFICIENCY OF.—The subscription to the writing appearing on the last page of such sheet, "Your loving mother," if a material consideration, is a sufficient signature.

---

2.  See 28 R. C. L. 116.

[3] ID.—PLACE OF SIGNATURE—INTENT.—Where a will has been signed by the testator, it is sufficient even though the signature is not in the place on the instrument where usually such a writing is signed, viz., at the end of the document, this rule being subject to the qualification that the signature of the testator, if not subscribed to the will—that is, if it is not at the end of the instrument, the usual place for the signature in such cases—then it must so appear from the document itself that the signature was thus placed with the intent that it should there serve as a token of execution as to afford a positive and satisfactory inference to that effect.

[4] ID.—CONTEST—TAKING PRELIMINARY PROOF IN ABSENCE OF JURY—PROCEDURE.—Where a contest of the probate of a will has been filed, it is proper for the trial court, in conducting the inquiry whether the instrument is or is not the last will and testament of the deceased, and has been duly executed, to take such preliminary proof in the absence of a jury which has been impaneled to try the contest, and to withhold making any order thereon, either admitting or refusing to admit the will to probate, until after the trial of the contest is had and determined by the jury.

[5] ID.—SANITY—PRESUMPTION.—A testator is to be presumed to have been sane when making his will, and in the case of a contest of the probate of a will, the proponent, when he opens the proceeding by preliminary proof of the due execution of the instrument, may rely on said presumption as constituting sufficient evidence of the testamentary competency of the testator until the same shall have been overthrown by countervailing proof.

[6] ID.—TESTAMENTARY CAPACITY—PRESUMPTION—JUDGMENT.—Where a contestant, after preliminary proof of the due execution of a will has been made, abandons the contest and offers no evidence to support any of the grounds thereof, and the presumption of sanity of the testatrix at the time she executed her will stands as the only evidence in the case as to her testamentary capacity, it is sufficient to support a decree or judgment in that particular.

[7] ID.—JUDGMENT OR ORDER ADMITTING WILL TO PROBATE—RECITAL OF FACTS—JURISDICTION.—The validity of a judgment or an order admitting a will to probate is not dependent upon the recital therein of the existence of facts, or the performance of acts, upon which the jurisdiction of the court must rest. It is only necessary that the judgment or order shall contain the matters ordered or adjudged. The jurisdictional facts must exist, but their existence

---

3. Name in body of holographic will as signature thereto, note, L. R. A. 1917D, 632. See, also, 28 R. C. L. 119, 163.

5. See 28 R. C. L. 97.

6. What constitutes capacity or incapacity to make will, notes, 27 L. R. A. (N. S.) 2; L. R. A. 1915A, 444.

and the finding thereof are to be implied from those matters which, under the law, must be by the judgment shown to be ordered and adjudged.

[8] ID. — JUDGMENTS — ISSUES — FINDINGS.—A judgment, being in all other respects sufficiently supported, will stand immune from successful attack, notwithstanding that there has been a failure to find on an admitted or an uncontroverted vital fact or issue; in other words, if the findings upon issues upon which findings have been pretermitted would necessarily have to be adverse to the appellant, the failure to find thereon would be without prejudice.

[9] ID.—SECTION 1317, CODE OF CIVIL PROCEDURE—CONSTRUCTION OF.— Section 1317 of the Code of Civil Procedure, requiring a certificate of the facts found to be attached to the will, was intended to and does apply exclusively to cases where there is a contest of the probate of the will.

[10] ID.—SUFFICIENCY OF JUDGMENT OR ORDER.—On this appeal from a judgment or order admitting a will to probate without contest, the judgment or order appealed from contains all the facts which are required to be set out therein where there is no contest.

[11] ID.—EXECUTOR—LANGUAGE IN WILL.—Where the writings constituting the holographic will contained the request that the son-in-law of the deceased "have charge of my affairs," the court in admitting the will to probate was authorized in appointing said son-in-law executor of the will

[12] ID. — INTENTION OF TESTATOR — APPOINTMENT OF EXECUTOR. — Where the intention of a testator that a certain person shall be named as executor to carry out the terms of his will is not expressed therein with directness, but is reasonably deducible from the language thereof, it is the duty of the court sitting in probate to respect that intention and so appoint such person as such executor.

(1) 40 Cyc., p. 1129, n. 5.  (2) 40 Cyc., p. 1131, n. 30 New.  (3) 40 Cyc., p. 1131, n. 28.  (4) 40 Cyc., p. 1131, n. 41 New.  (5) 40 Cyc., p. 1018, n. 1.  (6) 40 Cyc., p. 1023, n. 29.  (7) 40 Cyc., p. 1343, n. 42.  (8) 40 Cyc., p. 1341, n. 27 New.  (9) 40 Cyc., p. 1345, n. 57 New.  (10) 40 Cyc., p. 1345, n. 57 New.  (11) 23 C. J., p. 1021, n. 34.  (12) 23 C. J., p. 1020, n. 30.

APPEAL from a judgment or order of the Superior Court of San Joaquin County admitting will to probate. George F. Buck, Judge. Affirmed.

The facts are stated in the opinion of the court.

8.  See 24 Cal. Jur. 945.
11.  See 11 Cal. Jur. 294.

Perky & Scott, W. S. Scott and A. H. Carpenter for Appellant.

Nutter, Hancock & Rutherford and A. P. Hayne for Respondent.

HART, J., *pro tem.*—The deceased, Hannah L. Henderson, died in the county of San Joaquin, her place of residence, on the twenty-second day of October, 1922, of the age of about eighty-four years, leaving surviving her a son and a daughter, to wit: The appellant herein, Orrin S. Henderson, and a daughter, Helena (also called Lena) Cutting, wife of the respondent herein, and also leaving an estate, situated in said county, consisting wholly of personal property, principally in the form of choses in action, of the value of $2,500. Also surviving the deceased were grandchildren (the number not made to appear in the record), issue of the marriage between the respondent herein and Lena Cutting, as stated, daughter of the deceased.

In the latter part of the month of November, 1922, about five or six weeks after the date of the death of the deceased, Mrs. Cutting, wife of the respondent, found, in a small tin box in the house of the Cuttings, the following instrument in writing:

> "August 9 1922
> "Stockton, Calif.

"My Dear Children.
                "Frank and Lena.
"So the year's pass, I am reminded Day by Day, that I may soon hear the welcome summons, 'Child come Home.' I do not want to leave work undone. I want to make a request regarding what money's will be left, after I am gone and all expences paid.

"And Request that Frank Cutting have Charge of my affairs.

"I give to Frank Cutting $500 (five hundred)
        to Lena Cutting $500 (five hundred)
"What moneys shall be left together with interest, shall be given to my Dear Grand Daughter Lorraine Cutting.

"Good and Faithful.
"God Bless her.

> "Lovingly,
> "HANNAH L. HENDERSON."

"Dear Lena,

"Do not think it strange that I have changed my mind concerning my grand children. They are doing well for themselves. Today I am thinking of my Dear Son Orrin, so I ask you as a mother, to think of me as his mother, if you can, to send him a little gift from me say $50, or a $100 as you can  He may need it, His years are passing.

"God Bless and keep you both

"From A Loving

"MOTHER."

The above document was written on a single piece of paper, although physically divided into two parts. (The two parts, for convenience, will hereinafter be designated as the first and the second "paragraphs" or "writings.") The first, which is dated and signed by the testatrix, but which makes no mention of her son, Orrin S. Henderson, the appellant herein, was written on the first page, the paper upon which it was written being folded so as to make it consist of four pages. The second paragraph or writing, which bears no date and which is signed, "From a Loving Mother," was written on the fourth or last page of the paper.

On the tenth day of November, 1923, approximately a year from the time when found, said document was filed and presented by the respondent to the superior court in and for the county of San Joaquin upon a petition for the probate thereof as the holographic will and testament of the deceased. On December 3, 1923, the appellant filed and inaugurated a contest of the probate of said instrument upon the grounds: (1) That if, in fact, the deceased executed said instrument, she was, at the time of executing the same, "not of sound mind"; (2) that the execution of said instrument, "if the same was executed" by said Hannah L. Henderson at all, was executed through the undue influence of her daughter, said Helena Cutting, as follows: That the deceased had for a long period of time prior to the time of her death resided with her said daughter; that during all said time the deceased was both physically and mentally diseased, and by reason thereof required constant care and attention to the end that her wants should be administered properly or in a manner suitable to her weakened physical and mental condition; that she was during all said time so taken care of by

said Helena Cutting, and entirely dependent upon the last named for the care and attention required by reason of her weakened condition of body and mind; that, due to the care and attention thus given deceased by said Helena Cutting, the latter acquired and maintained, and at the time of the execution of the said purported will, was able to and did exercise an overruling influence over the mind and will of said deceased, and so "procured the said Hannah L. Henderson to execute said purported will."

The proponent answered the appellant's grounds of opposition to the probate of said document as the will of the deceased, denying specifically all the averments of the petition, and alleging affirmatively that, at the time she executed the purported will, the deceased was mentally sound and possessed of testamentary capacity.

A jury was called and impaneled to try the contest, but, by order of the court, the proceeding involving the preliminary proof of the purported will was, over objection by the contestant, conducted in the absence of the jury; the court stating that it would hear such proof and withhold making any order thereon, either admitting or refusing to admit the will to probate, until after the trial of the contest was had and determined by the jury. Thereupon the jury were excused pending the taking of testimony for the purpose just stated, and the respondent, Cutting, was called to the witness-stand, and testified that, as stated above, his wife, Helena Cutting, in the latter part of November, 1922, found the instrument offered for probate as the will of deceased in a small tin box belonging to the deceased, and kept by her at the home of the witness while the former resided there, and in which she preserved other private papers, including promissory notes held by her against other parties; that Mrs. Cutting maintained possession of the instrument until it was filed for probate on November 10, 1923; that witness was familiar with and knew the handwriting of the deceased; and that the instrument proposed for probate as her will was, including the date and signature, entirely in the handwriting of the deceased. Cutting further testified that deceased was of the age of about eighty-four years, and that her only heirs at law were his wife, Helena Cutting, and the appellant herein. The direct examination of Cutting was, by leave of the court, conducted by the attorneys for the

proponent of the will, and a cross-examination of said witness, also by leave of the court, was prosecuted by the attorneys for the contestant. The inquiry as so conducted was, of course, limited to the precise matter then before the court, to wit: Whether the instrument in question was or was not, in law and in fact, the last will and testament of the deceased, and was duly executed, and was, therefore, entitled to be admitted to probate. Upon the conclusion of the taking of Cutting's testimony, counsel for proponent offered in evidence, as the last will and testament of deceased, the document filed and presented as such. To the offer and the reception of this evidence, counsel for contestant objected upon substantially the same grounds as those upon which they object to the order or decree admitting the will to probate, and hereinafter to be considered, but the court overruled the objection on all the grounds upon which it was founded, expressly refusing, however, to make an order in the premises until after the issues involved in the contest had been tried and disposed of. This preliminary proceeding having thus been concluded, the court thereupon ordered the jury to be returned into court and directed the counsel for the contestant to proceed with the trial of the contest upon the issues as framed and tendered; whereupon said counsel declared that they did not desire or intend to proceed further, and the matter was thereupon submitted to the court upon the preliminary proceedings and the proof therein taken upon the petition to admit the document to probate as the last will and testament of the deceased. The court then rendered and entered its order or decree, finding and adjudging that ''said document is the last will and testament of Hannah L. Henderson, deceased, and that the same was and is a holographic will, and that the same was entirely written, dated and signed by the hand of the said testatrix herself, on the 9th day of August, 1922, and that said document is a single continuous instrument, written on a single piece of paper, and is a harmonious, homogeneous, holographic will, and constituted and constitutes one instrument.'' The age, the place of residence, the value of the estate, the place of death, and ''the sole and only heirs'' of the deceased are likewise found, and upon all the findings the document in question was by the court ordered admitted to probate as the last will and testament of said Hannah L.

Henderson, deceased. It was further ordered that "said Francis Cutting be, and he is hereby appointed executor thereof, and that letters testamentary thereon issue to him as such executor upon his filing a bond" in a specified amount.

The contestant, Orrin S. Henderson, appeals from said order or judgment.

[1] That the document in question was written, dated, and signed by the deceased herself and is entirely in her own handwriting, is not questioned here. It is objected, however, that that portion of the decree finding and adjudging that "said document is a harmonious, homogeneous, holographic will, and constituted and constitutes one instrument," involves a construction of the instrument wholly without warrant either from the language of the second paragraph thereof, standing alone, or from said language viewed in connection or together with that of the first paragraph of the instrument; that the two paragraphs, upon their face, disclose no necessary relation to each other, nor, howsoever viewed, are reasonably susceptible of such a construction. We agree with the trial court's construction of the document as a whole as indicated by its findings and judgment.

But for the fact that *dehors* the document itself it was made to appear that one of the lawful heirs of the deceased was thereby pretermitted or not named therein, the first paragraph of the document, having been shown to have been written, dated, and signed by the deceased herself, constituted in all respects a perfectly valid holographic testamentary disposal of her estate. And it will, of course, be conceded that, even though the first paragraph or writing be, *pro tanto*, invalid, because of the pretermission therefrom of a lawful heir of the deceased (Code Civ. Proc., sec. 1307), or even though wholly invalid, it is, nevertheless, perfectly clear therefrom that by said paragraph the deceased intended to make testamentary disposal of her estate. What, then, could the deceased have intended to accomplish by writing the second paragraph on the sheet of paper on which she had holographed her will, if, as appellant contends is true, she did not have in mind her will as so written and intend that the second writing should have relation to and probably have some important effect upon the will as she

had written it in the first instance? That the second writing is in the form of a letter addressed to her daughter does not militate against the conclusion that the circumstance that the two writings were written on the same sheet of paper is indicative of an intention in the deceased that they together should constitute her will. Under the circumstances, nothing could be more natural than that a mother should have written the paragraph in the form of a letter and addressed the same to her daughter upon a subject which is always of vital concern to those who, having already spent the allotted time of mortal life, are engaged in preparations looking to the posthumous transmission of their earthly belongings to those whom they desire shall have, own and enjoy the same. The daughter was a legatee under her will, and, having omitted to provide in her will for her only son, and, as we may well assume, urged by the maternal love and affection which in such ardent terms she expressed for him in the second writing, she thus appealed to her daughter as the one who would, in her opinion, the more likely comply with such a request, to present to that son— the only brother of that daughter—out of her (the daughter's) legacy a small sum of money as a gift from the deceased—indeed, as a memorial to the motherly love she then, and, as may well be inferred from the terms of maternal affection in which she referred to him, always had cherished for him. However, as before stated, it is reasonably clear that had the deceased not intended the second writing to be in some way supplementary to her will she would not have written it upon the sheet of paper upon which previously, as may be assumed, she had written her will. This conclusion is reinforced by the consideration that the language of the second writing is of a testamentary character—that is to say, it clearly appears to be so when viewed by the light of the tenor of the first writing, as thus it should be considered. Indeed, as so considered, it would be doing violence to plain language to hold to the contrary. The very fact that deceased in said writing requested her daughter to "send him (her son) a little gift from me, say $50.00 or $100.00," cannot reasonably be construed otherwise than that deceased, when penning those words, had in mind the first writing and the fact that therein she failed to name or mention him. In other words, that language is clearly in-

dicative of the fact that the deceased, after writing the first, came to realize that she had failed (doubtless deprecatingly) to express for him a mother's devotion in a document of peculiar sacredness—sacred because it was to contain the expression of the last thoughts of one for those nearest and dearest to her in life which would be the first to receive attention and the last to be forgotten after her voice had forever been silenced. Again, as in testimony of the testamentary character of the second writing, and that it was written in contemplation of the will she had previously executed, there is her reference to her grandchildren. She stated, in effect, that she had undergone a change of mind regarding her grandchildren. Immediately following this declaration are the words (singularly significant in connection with the present consideration): "They [referring to her grandchildren] are doing well for themselves." When considered by the light of the fact that the second writing was executed on the sheet of paper on which she had written her will, and also in view of the fact that her venerable years, at the time both writings were executed, confronted her with the warning or admonition that her span of life, according to natural order, was near its termination, what other signification could reasonably be attached to that language or those words than that she then had in mind the posthumous disposition or settlement of her earthly affairs, and that what she wrote in said paragraph was by her intended to be testamentary, and, indeed, to form a part of the instrument previously executed on the same sheet of paper?

The opinion in the very recent case of *Estate of Spitzer, ante,* p. 301 [237 Pac. 739], considered a situation which, in the general aspect thereof, is much like that presented here. Therein the court, speaking through Mr. Justice Seawell, held that the several writings offered for probate as the will of the deceased were of a testamentary character. Much of what is said by Justice Seawell in that case is pertinent to the circumstances of this case. It is sufficient, however, to quote therefrom the following excerpt adopted into the opinion in that case from *Estate of Beffa,* 54 Cal. App. 186 [201 Pac. 616].

"It is well settled in this country and in England, first, that in determining whether the instrument propounded as intended to be testamentary, reference will be had to the

surrounding circumstances, and the language will be construed in the light of these circumstances. Second, that if it shall appear under all the circumstances that the instrument was intended to be testamentary, the court will give effect to the intention, if it can be done consistently with the language of the instrument; and in such cases the particular form of the instrument is immaterial. (*Clarke* v. *Ransom,* 50 Cal. 600.) A will may be informally drawn, and may consist of one or more papers. No particular words are necessary to show a testamentary intent. It must appear only that the maker intended by it to dispose of property after his death, and parol evidence as to the attending circumstances is admissible. (*Mitchell* v. *Donohue,* 100 Cal. 207 [38 Am. St. Rep. 279, 34 Pac. 615].) It is undoubtedly the general rule enunciated by the leading case of *Habergham* v. *Vincent,* 2 Ves. Jr. 231, and oft repeated, that the true test of the character of an instrument is not the testator's realization that it is a *will,* but his intention to create a revocable disposition of his property to accrue and take effect only upon his death and passing no present interest. (*Nichols* v. *Emery,* 109 Cal. 329 [50 Am. St. Rep. 43, 42 Pac. 1091].)''

So far as the present consideration is concerned, it is not important to inquire what particular thought or purpose was in her mind when she wrote the statement in the second writing to the effect that she had changed her mind as to her testamentary plans regarding her grandchildren, or in what particular or particulars she had changed her mind; nor is it of consequence, in the determination of the present question, that the words with which the deceased expressed in the second writing her desire that her son should be given or receive something from her estate are of a precatory nature. It is sufficient to know that the deceased intended that both paragraphs were to be taken together as constituting her last will and testament.

The construction to which thus the document before us has been subjected rests upon reasons no less cogent or persuasive than those upon which this court, in cases hitherto decided, has sustained several separate documents as constituting together single holographic wills. (*Estate of Skerrett,* 67 Cal. 585 [8 Pac. 181]; *Estate of Merryfield,* 167 Cal. 729 [141 Pac. 259].) Indeed, the case here, as to the facts

from which the intention of the deceased is to be deduced, stands upon a footing somewhat stronger than that buttressing the cases just named, in that in the instant case the two writings are upon the same sheet of paper, while in the other cases the writings were on separate sheets.

In the Skerrett case there were two separate writings, one of which was a copy of a deed of gift to the grantee therein named of certain real property, and written, dated and signed entirely in the handwriting of the deceased, and the other a letter addressed to said grantee, and entirely in the handwriting of the deceased. The original deed was executed and acknowledged in the presence of witnesses, but was never delivered, and was therefore ineffective as a grant of real property. The letter was not dated. A copy of the deed and the letter were found after the death of the deceased in an envelope in a tin box belonging to him. The court held that, while neither document, taken alone, would constitute a holographic will—the copy of the deed because not containing testamentary words, and the letter because, although containing testamentary words and stating that deceased intended that the grantee named in the deed should receive as a devise the real property therein described, it was undated—the two, taken together, as the deceased undoubtedly intended they should be considered, formed a complete holographic will.

In the Merryfield case there were three separate writings on as many different sheets of paper. These sheets were found folded together in a locked drawer, and each entirely in the handwriting of the deceased. The language of each was testamentary in character, and all related to the same general subject matter and the same parties whom deceased clearly intended to make the beneficiaries of her estate. The first writing was neither dated nor signed, the second was signed by the deceased, but imperfectly dated, the third was dated and signed by the deceased. The one mentioned certain heirs to whom the deceased expressed the intention of giving nothing. The third sheet, in the order in which they were folded together, and as above given, omitted to mention said heirs, but was itself otherwise complete as a holographic will. All three papers were presented together for probate as constituting the will of deceased. The claim was urged, in a contest to the admission of the will to pro-

bate, that the writing upon the third sheet alone constituted the will of the deceased. The trial court decided that the contents of the three sheets, taken together, constituted a single instrument, and that such instrument constituted the last will and testament of the deceased. On appeal this court sustained the decision of the trial court.

[2] The subscription to the second paragraph, "Your loving mother," if a material consideration here, is a sufficient signature. (*Ex parte Walker*, 15 Quebec Probate Reports, also entitled "Rapport's de Practique de Quebec," 15; *Estate of Kimmel*, 278 Pa. 435 [31 A. L. R. 678, 123 Atl. 405]; *Wells v. Lewis*, 190 Ky. 626 [228 S. W. 3]; Page on Wills, sec. 170.) But, in view of the conclusion that the two writings together constitute a holographic will, the contention that the subscription to said writing, "From your loving Mother," is not such a signature as the law requires shall be subscribed to a will, is of no material importance, since the signature of the testatrix at the end of the first paragraph sufficiently measures up to the requirement as to the signatures to wills.

[3] Where a will has been signed by the testator, it is sufficient even though the signature is not in the place on the instrument where usually such a writing is signed, viz., at the end of the document. (*Estate of McMahon*, 174 Cal. 423 [L. R. A. 1917D, 778, 163 Pac. 669].) Of course, this statement is subject to the qualification that if the signature of the testator is not subscribed to the will—that is, if it is not at the end of the instrument, the usual place for the signature in such cases—then it must so appear from the document itself that the signature was thus placed "with the intent that it should there serve as a token of execution" as to afford "a positive and satisfactory inference" to that effect. (*Estate of Manchester*, 174 Cal. 417 [Ann. Cas. 1918B, 227, L. R. A. 1917D, 629, 163 Pac. 358]; *Estate of Streeton*, 183 Cal. 284 [191 Pac. 16].) That the instant case fully exemplifies the test thus stated is a proposition too obvious to require further consideration.

[4] The contention that the action of the court in conducting the proceeding involving the matter of the admission of the will to probate in the absence of the jury was improper is opposed to the rule in that particular declared by our decisions. This court has a number of times held that

the procedure followed in this case by the court below involves the only course to be pursued where the probate of a will is contested. (See *Estate of Latour*, 140 Cal. 414 [73 Pac. 1070, 74 Pac. 441]; *Estate of McDermott*, 148 Cal. 43, 49 [82 Pac. 842]; *Estate of Cullberg*, 169 Cal. 365 [146 Pac. 888]; *Estate of Relph*, 192 Cal. 451, 458, 459 [221 Pac. 361].) The last-named case contains the latest expression of this court upon the subject, and, though, as seen, the procedure in this class of cases is definitely settled in this state, it is conceived not to be supererogatory to give the importance of keeping the rule in mind in instances such as we have here further emphasis by quoting the following clear exposition of the rule in the Relph case:

"When a will is contested before probate there are two separate and distinct proceedings pending before the court. One is the petition for the probate of the will; the other is the contest of the probate of the will. (Citing cases.) The petition for the probate of a will is distinctly a proceeding *in rem*. (*Estate of Baker*, 170 Cal. 578, 585 [150 Pac. 989]; *Estate of Allen*, 176 Cal. 632 [169 Pac. 364].) . . . In the proceeding for the probate of the will, as distinguished from the proceedings upon the contest, the evidence and the issues of fact are solely for the consideration and determination of the court, even though a jury may have been demanded and impaneled for the trial of the issue upon the contest. . . . The contestants are not parties to this proceeding and have no right to appear therein, . . . but the trial court, having itself the right to cross examine the witnesses produced therein, may, in the exercise of its discretion, permit counsel for contestants so to do. . . . But when such permission is granted it is as a matter of grace and not in recognition of a right possessed by contestants."

There is no merit to the contention that the decree appealed from is unsupported because there was a failure to prove that the deceased, at the time she executed the testament, was mentally sound or possessed of testamentary capacity; nor is there any force in the further contention that the decree cannot stand because the court failed to find certain jurisdictional facts. [5] To the proposition first stated, a ready answer is found in the rule, elementary in our system of jurisprudence, that a testator is to be presumed to have been sane when making his will, and that, in the

case of a contest of the probate of a will, the proponent, when he opens the proceeding by preliminary proof of the due execution of the instrument, may rely on said presumption as constituting sufficient evidence of the testamentary competency of the testator until the same shall have been overthrown by countervailing proof. (*Estate of Johnson,* 152 Cal. 778, 783, 784 [93 Pac. 1015]; *Estate of Cullberg,* 169 Cal. 365 [146 Pac. 888].) [6] The contestant here having abandoned his contest and, therefore, offered no evidence to support any of the grounds thereof, the presumption referred to stands as the only evidence in the case as to the testamentary capacity of the deceased at the time she executed the will, and thus there is ample support to the decree or judgment in that particular. The proposition secondly stated involves a challenge of the legal integrity of the decree or judgment or order on the ground that there was a failure to make express findings that, at the time deceased executed the will, she was over the age of eighteen years (Civ. Code. sec. 1270), and also that, as the petition for the probate of the will alleges, she was of sound and disposing mind and memory, "and not acting under duress, fraud, or undue influence of any person," etc. [7] The validity of a judgment or an order admitting a will to probate is not dependent upon the recital therein of the existence of facts, or the performance of acts, upon which the jurisdiction of the court must rest. It is only necessary that the judgment or order shall contain, as does the decree in this case, the matters ordered or adjudged. (Code Civ. Proc., sec. 1704.) Of course, the jurisdictional facts must exist, but their existence and the finding thereof are to be implied from those matters which, under the law, must be by the judgment shown to be ordered and adjudged. Furthermore, there was no testimony disputing that of the witness Cutting that the deceased, on the ninth day of August, 1922, the date of her will, was of the age, approximately, of eighty-four years; nor, as seen, was the presumption of the mental soundness or testamentary competency of the deceased, or that she was not unduly influenced or otherwise wrongfully procured to make the will, contradicted or impeached, evidentially. [8] A judgment, being in all other respects sufficiently supported, will stand immune from successful attack, notwithstanding that there has been a failure to find

on an admitted or an uncontroverted vital fact or issue. In other words, if, as would be true here, the findings upon issues upon which findings have been pretermitted would necessarily have to be adverse to the appellant, the failure to find thereon would be without prejudice. (See 2 Cal. Jur., sec. 614, p. 1032 et seq.)

[9] It is further contended that the judgment or order is wanting in essential support because of the failure of the court to make a certificate of the facts found and cause the same to be attached to the will, as provided in section 1317 of the Code of Civil Procedure. That section, it is clear, not only from its language but from its position in the code, was intended to and does apply exclusively to cases where there is a contest of the probate of the will. The section, which is under article II of chapter 2, and under the sub-head ''Contesting Probate of Wills,'' reads:

''If the court is satisfied, upon the proof taken, *or from the facts found by the jury,* that the will was duly executed, and that the testator at the time of its execution was of sound and disposing mind, and not acting under duress, menace, fraud, or undue influence, a certificate of the proof and the facts found, signed by the judge and attested by the seal of the court, must be attached to the will.''

[10] Here, as seen, there was no contest, and the judgment contains all the facts which are required to be set out therein where there is no contest. In such case, the legislature, it seems, regarded the findings, together with the presumptions favorable to the order or judgment which the law wisely indulges, as being sufficient.

Lastly, it is contended that the court transcended its authority or jurisdiction by appointing the legatee, Francis Cutting, as executor of the will. This contention is grounded upon the asserted fact that the will does not, *eo nomine,* nominate an executor; it being hence argued that it was the duty of the court to issue either to Orrin S. Henderson or to Mrs. Cutting, son and daughter of deceased and her only surviving heirs, letters of administration, with will annexed. (Secs. 1350a and 1365, Code Civ. Proc.; *Estate of Crites,* 155 Cal. 392 [101 Pac. 316], and cases therein named.) [11] As will be observed, the first of the two writings constituting the will of the deceased contains the following words: ''And

request that Frank Cutting have charge of my affairs.'' This
language means, as is naturally to be inferred from the con-
nection in which it is used, that the deceased desired and
intended that said Cutting, her son-in-law and a legatee
by the terms of her testament, should be appointed as the
executor thereof. Indeed, it would be difficult reasonably to
give that language any other interpretation. **[12]** Where
the intention of a testator that a certain person shall be
named as executor to carry out the terms of his will is not
expressed therein with directness, but is reasonably deducible
from the language thereof, it is the duty of the court sitting
in probate to respect that intention and so appoint such per-
son as such executor. (Civ. Code, sec. 1371; *Morffew* v. *San
Francisco & S. R. R. R. Co.*, 107 Cal. 587 [40 Pac. 810];
*Estate of Ringot*, 124 Cal. 45 [56 Pac. 781].)

There are no other points requiring notice herein.

The order or judgment appealed from is affirmed.

Lawlor, J., Richards, J., Shenk, J., Seawell, J., and
Houser, J., *pro tem.*, concurred.