18 Cal.Rptr.3d 637 (2004)
122 Cal.App.4th 326
ESTATE OF Bruce Alan JONES, Deceased.
Kathy Hardie, Petitioner and Appellant,
v.
Bruce V. Peddy, as Administrator, etc., Objector and Respondent.
No. C045573.
Court of Appeal, Third District.
September 14, 2004.
*638 Law Office of Myron Moskovitz and Myron Moskovitz; Law Office of Thomas J. Wilson and Thomas J. Wilson, Oceanside, for Petitioner and Appellant.
Law Office of Scott A. Bovee and Scott A. Bovee for Objector and Respondent.
SIMS, J.
In this appeal from a judgment ordering final distribution of the estate of decedent Bruce Alan Jones, appellant Kathy Hardie (the daughter of the decedent's former wife) contends that, contrary to the trial court's decision, the decedent intended her to serve as executor and inherit under a residuary clause despite decedent's divorce from appellant's mother. We shall affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND
In 1982, Bruce Alan Jones married appellant's mother Sharon, who had two daughters from a prior marriage  appellant (then age 21) and Paula Labo (then age 19).
In 1988, while still married, Jones executed the will that is the subject of this appeal. The will stated: "I appoint my wife, Sharon, Executrix hereunder and if she shall fail to qualify, or having qualified shall die, resign, or cease to act as Executrix, then I appoint Kathy Hardie [appellant] to act hereunder." The will also stated: "I give my entire estate to my wife Sharon if she survives me. If she does not survive me, A) I give and bequeath to my sister Susan Peddy all my books, the Jones family pictures, sword, airplane propeller and framed engraved copper plate artwork; B) I give and bequeath to my stepmother Patricia R. Jones the sum of Ten Thousand Dollars ($10,000.00); C) I give and bequeath to my nephew Clayton Peddy the sum of Ten Thousand Dollars ($10,000.00); D) I give and bequeath to my niece Alison Peddy the sum of Ten Thousand Dollars ($10,000.00); E) all the rest, residue, and remainder of my property, real, personal, and mixed, at whatever time acquired by me and wherever situated, I give, devise, and bequeath (in equal shares) to the following beneficiary or beneficiaries who survive me: my stepdaughters Paula Labo and [appellant] Kathy Hardie." (Italics added.)
In 1994, Jones and appellant's mother divorced.
In November 2002, Jones died.
Appellant's mother died in 2003.
In December 2002, letters of administration were issued to appoint Jones's brother-in-law, Bruce V. Peddy, as administrator *639 of the estate, upon the assertion that Jones died intestate.
In March 2003, appellant filed a petition for order for production of will, asserting Peddy was aware Jones had left a last will and testament dated July 14, 1988. Appellant also filed a petition asking that the court remove Peddy as administrator and appoint her as executor under the terms of the 1988 last will and testament.
Peddy objected to appointment of appellant as executor, based upon Jones's divorce from appellant's mother.
On June 9, 2003, the court issued a "Stipulated Order," stating the parties had stipulated that (1) Peddy, having been appointed Administrator, shall file an accounting by June 30, 2003; (2) Peddy shall proceed with specified actions and deposit proceeds in an attorney trust account; and (3) Peddy shall not take any other action on behalf of the estate.
On June 30, 2003, an order for probate was filed, appointing Peddy as administrator with will annexed, with full authority to administer Jones's estate.
In September 2003, a hearing was held on the contested issue of the will's residuary clause, which left property to "my stepdaughters Paula Labo and [appellant] Kathy Hardie" "if [my wife Sharon] does not survive me."
On September 30, 2003, the court issued a tentative statement of decision, which by its own terms became the statement of decision upon the absence of objection of the parties within 10 days. The court noted Probate Code section 6122[1] states marital dissolution revokes any testamentary disposition made by will to the former spouse, "[u]nless the will expressly provides otherwise," and in case of revocation by dissolution "[p]roperty prevented from passing to a former spouse because of the revocation passes as if the former spouse failed to survive the testator."
The court stated in part: "The language [of the will] here shows that Mr. Jones designated [appellant] first as one of his stepdaughters, and then named them [the stepdaughters] to ensure that the reader of the will would be clear about whom he was in fact talking about [sic]. The facts show that at the time of the marriage, both stepdaughters were already of the age of majority. Ms. Labo was 19 and [appellant] was 21. At the time of his death they would have been 39 and 41 respectively. The facts further indicate that the divorce had been final for over eight years at the time of Mr. Jones['s] death. The law regarding revocation of dispositions to former spouses is clear. The law regarding dispositions to the issue of a former spouse is less than clear. In this case, based upon the relevant facts unique to this case, the court finds that the intent of the testator was that his initial residual bequest to [appellant], was to her as a member of a class, that being, his stepdaughters at the time he made the bequest. Upon the divorce, she was no longer a member of that class. There had evidently been no adoption or other legally significant event that changed her designation. Evidence presented in the form of the Marital Settlement Agreement further supports Mr. Jones['s] intent to terminate any and all rights flowing as a result of his marriage to Sharon Jones.[[2]] As stated in [a cited *640 case], this court also may have reached a different conclusion with different language and different facts. The language of the will and the facts as agreed to lead the court to its conclusion. [¶] The court finds that the rights of [appellant] as a residual beneficiary under the will were terminated by the dissolution, and by the intent of the testator, Mr. Bruce Jones."
The court also stated that, based upon its decision concerning the residuary clause, appellant lacked standing to challenge the appointment of Peddy as administrator of the estate.
On October 17, 2003, judgment was entered settling the accounts of Peddy as administrator, approving his acts as administrator, authorizing payment to the administrator's attorney, and directing distribution of the remainder of the estate to Jones's mother.
Appellant filed a timely notice of appeal from the judgment and the order (statement of decision) ruling appellant was not entitled to the residuary estate and therefore lacked standing to challenge the appointment of Peddy as administrator. The order determining appellant was not entitled to the residuary estate was appealable. (§ 1303, subd. (f).) Although it appears appellant did not file a timely appeal from the June 2003 appointment of Peddy as administrator (§ 1303, subd. (a)), on appeal from the judgment we shall address appellant's timely challenge to the court's ruling that she lacked standing to challenge the appointment.
Peddy has filed a respondent's brief in this appeal.

DISCUSSION

I. Standard of Review

Appellant seeks de novo review. (Estate of Hermon (1995) 39 Cal.App.4th 1525, 1529, 46 Cal.Rptr.2d 577 [de novo review applied where neither party introduced extrinsic evidence concerning the meaning of language used by the testator].) Peddy argues the standard of review should be abuse of discretion, because there were disputed facts and extrinsic evidence on the contested issue of the testator's intent (e.g., a declaration of Jones's fiancée, who said Jones's sister said he would not have wanted the residuary clause to stand).[3]
Since the trial court stated it decided this case based upon the "language of the will and the facts as agreed to," (italics added), we will apply de novo review.

II. The Residuary Clause

Appellant believes she should inherit under the residuary clause despite her mother's divorce from the testator. We disagree.
Generally, "[t]he intention of the transferor as expressed in the instrument controls the legal effect of the dispositions made in the instrument." (§ 21102.)
*641 The residuary clause in favor of "my stepdaughter[] . . . Kathy Hardie [appellant]" was to take effect, as stated in the will, "[i]f she [my wife Sharon] does not survive me." Although Sharon did survive Jones, the divorce revoked the bequest to her pursuant to section 6122. Also pursuant to section 6122, she is treated as having failed to survive him.
Thus, section 6122 provides in part:
"(a) Unless the will expressly provides otherwise, if after executing a will the testator's marriage is dissolved or annulled, the dissolution or annulment revokes all of the following:
"(1) Any disposition or appointment of property made by the will to the former spouse.
"(2) Any provision of the will conferring a general or special power of appointment on the former spouse.
"(3) Any provision of the will nominating the former spouse as executor, trustee, conservator, or guardian.
"[¶] . . . [¶]
"(c) In case of revocation by dissolution or annulment:
"(1) Property prevented from passing to a former spouse because of the revocation passes as if the former spouse failed to survive the testator.
"(2) Other provisions of the will conferring some power or office on the former spouse shall be interpreted as if the former spouse failed to survive the testator." (§ 6122.)
As noted by the trial court, section 6122 does not address the effect of divorce on bequests to children of the former spouse.
Preliminarily, we note that the will made a bequest to "my stepdaughters Paula Labo and [appellant] Kathy Hardie." (Italics added.) However, as appellant conceded at oral argument, at the time the testator died, appellant was no longer a stepdaughter, because that relationship had ended with appellant's mother's divorce from the testator. Hence, a literal reading of the will excludes appellant from taking. But we do not rest our opinion on this literal, technical reason alone.
Estate of Hermon, supra, 39 Cal. App.4th 1525, 46 Cal.Rptr.2d 577, relied upon by the trial court in this case, held, "when a testator provides for his spouse's children, he normally intends to exclude children of an ex-spouse after dissolution, unless a contrary intention is indicated elsewhere in his will." (Id. at p. 1531, 46 Cal.Rptr.2d 577.) We agree.
In Hermon, supra, 39 Cal.App.4th 1525, 46 Cal.Rptr.2d 577, a decedent's will, which was executed during a marriage that was dissolved before his death, made bequests  in the event his wife predeceased him  to "my children and my spouse's children" and "my issue and my spouse's issue." (Id. at p. 1527, 46 Cal.Rptr.2d 577.) The children of the former wife argued they were members of a class that continued to exist after the divorce, and they were entitled to share in the estate with the testator's natural children. (Id. at p. 1529, 46 Cal.Rptr.2d 577.) Since a will speaks as of the date of the testator's death, where there is a testamentary gift to a class, the members of the class are to be determined upon the testator's death. (Id. at p. 1530, 46 Cal.Rptr.2d 577.)
The Court of Appeal for the First Appellate District held the bequests to the ex-wife's children failed due to absence of an expression of intent for the bequest to survive the marital dissolution. (Hermon, supra, 39 Cal.App.4th 1525, 1531, 46 Cal. Rptr.2d 577.) Hermon first observed the case was not controlled by section 6122 (the effect of which is that upon divorce the testator's spouse "dies" for purposes of *642 implementing the provisions of the will), because that statute addressed spouses, not children of spouses. (Id. at pp. 1528-1530.) Hermon said out-of-state cases, where the operation of "revocation by dissolution" statutes similar to section 6122 triggered gifts in favor of the relatives of the former spouse, were not persuasive because in those cases the testamentary gifts were made to beneficiaries identified by name, whereas in the case before the Hermon court, the beneficiaries were described as a class, by their relationship to the testator. (Id. at pp. 1529-1530.) Hermon also said no two wills are exactly alike, such that a case interpreting one is rarely any great help in interpreting another. (Ibid.)
Hermon, supra, 39 Cal.App.4th 1525, 46 Cal.Rptr.2d 577, found it significant that the testator's former stepchildren were listed by name only in the preamble to the will for identification purposes. (Id. at p. 1531, 46 Cal.Rptr.2d 577.) In the dispositive portions of the will, the words "my spouse's children" and "my spouse's issue" were used without naming any individuals, "signalling the testator's paramount intention to describe the beneficiaries not as individuals but as members of a group identified by familial ties." (Ibid.) There was nothing in the will to indicate the testator wanted to provide for "my former spouse's children." (Ibid.) "We think it is a more logical construction to hold that when a testator provides for his spouse's children, he normally intends to exclude children of an ex-spouse after dissolution, unless a contrary intention is indicated elsewhere in his will." (Ibid.) Hermon noted a revised provision of the Uniform Probate Code (a provision that to date has not been adopted in California) revokes not only testamentary bequests to the former spouse but also bequests to the former spouse's relatives. (Id. at p. 1532, 46 Cal.Rptr.2d 577.) "The general predicate of this provision is that, during the dissolution process or in the aftermath of the dissolution, `the former spouse's relatives are likely to side with the former spouse, breaking down or weakening any former ties that may previously have developed between the transferor and the former spouse's relatives. . . .' (8 West's U. Laws Ann. (1983) Estate, Probate and Related Laws (1994 pocket supp.) p. 194.)" (Hermon, supra, 39 Cal.App.4th at p. 1532, 46 Cal.Rptr.2d 577.) The Hermon court urged the Legislature to adopt a statute similar to the cited provision of the Uniform Probate Code. (Ibid.)
The Legislature has not answered the call of the 1995 Hermon decision.
Here, appellant argues this case is different from Hermon, supra, 39 Cal. App.4th 1525, 46 Cal.Rptr.2d 577, because here the testator did name her by name ("my stepdaughters Paula Labo and Kathy Hardie [appellant]"), not merely by class. Appellant argues that, where a testator leaves property to named individuals, it is reasonable to presume he meant his property to pass to those individuals, even if he supplemented the names with relationship identifiers ("stepdaughters") which he presumably added only to ensure correct identification and not to limit the bequest to a class. She argues such a presumption would be consistent with the general principle expressed in section 21120, that "[p]reference is to be given to an interpretation of an instrument that will prevent intestacy or failure of a transfer, rather than one that will result in an intestacy or failure of a transfer." (Italics added.) Appellant quotes from Estate of Murphy (1909) 157 Cal. 63 at page 68, 106 P. 230: "If words, which, standing alone, would be effectual to create a class, are followed by equally operative words of devise to devisees by name and in definite proportions, the law infers from the designation by *643 name and mention of the share each is to take, that the devisees are to take individually and as tenants in common and that the descriptive portion of the clause (children of a deceased sister) is intended merely as matter of identification. [Citations.]"
However, the issue in Murphy, supra, 157 Cal. 63, 106 P. 230, was the effect of the death of one of the sister's children before the testator died. Murphy has no bearing on the issue presented in this appeal.
Moreover, we are not persuaded by appellant's presumption that use of her name in the will displayed an intent to provide for her after divorce. It seems more likely the testator was not contemplating divorce when he prepared his last will and testament six years before the divorce. Appellant was already an adult when her mother married Jones, and so there is no issue of the bond associated with raising a child. The marital settlement agreement (see fn. 2, ante) made apparent a desire for a clean break between the parties and expressly stated husband and wife agreed to relinquish any future claims against the estate of the other (except as provided in a will or codicil dated after the date of the marital settlement agreement), and the marital settlement agreement was binding on the parties and their heirs and successors. The general preference for upholding testamentary transfers does not speak to the circumstances of this case.
In her reply brief, appellant argues the marital settlement agreement is irrelevant, because she is not claiming any rights as her mother's heir but rather based on her own right as a named beneficiary. However, she was named in the will in the first place only because her mother was married to the testator. She would take only in the event of her mother's death.
Persisting in her focus on the individual-versus-class distinction, appellant argues California courts have adopted the presumption that a bequest to named individuals is not a bequest to a class. Appellant quotes from a treatise, which said the inference from the use of group terms is that a gift to a class is intended, but a contrary intent is indicated "where the testator designates the class, but also names the individuals who comprise it. This justifies the inference that he intended that only those persons should take, and referred to the class merely for purposes of identification of the individuals. (Estate of Murphy [, supra, 157 Cal.] 63, 67 [106 P. 230] [gift to be `equally divided among the four children of my late sister,' naming each one]; Estate of Burnett (1941) 42 [Cal.App.]2d 427, 430 [109 P.2d 26]; Estate of Sullivan (1939) 31 [Cal.App.]2d 527, 529 [88 P.2d 225]; Estate of Moore (1955) 135 [Cal. App.]2d 122, 134 [286 P.2d 939] [holographic will, gift `to Carrie D. Griffin and her sister, Anna M. Davis, equally divided']; Rest. Property § 280; 13 A.L.R.4th 978 [gift to persons individually named but also described in terms of relationship to testator or another as class gift].)" (12 Witkin, Summary of Cal. Law (9th ed. 1990) Wills & Probate, § 281, pp. 312-313.)
However, none of the cited cases addressed the effect of divorce. Moreover, the updated Witkin supplement cites Hermon, supra, 39 Cal.App.4th 1525, 46 Cal. Rptr.2d 577, for the proposition that when a testator provides for his spouse's children, he normally intends to exclude them after dissolution of the marriage, unless a contrary intention is indicated elsewhere in his will. (12 Witkin, Summary of Cal. Law (2004 supp.) Wills & Probate, § 281, p. 106.)
Appellant seeks support in out-of-state cases such as In re Estate of Kerr (Minn.Ct.App. 1994) 520 N.W.2d 512 *644 (Kerr), which said that, in the absence of contrary intent, the word "stepdaughter," when used in conjunction with the individual's name, was a descriptive term rather than a condition limiting the bequest. (Id. at p. 514.) She says two other out-of-state cases are in accord, but she offers no discussion of those cases.
However, in Kerr, supra, 520 N.W.2d 512, there was a direct bequest to "all children of mine . . . including . . . my stepdaughter, Dawn M. Valentine." (Id. at pp. 513-514.) Here, the bequest to appellant was a residuary bequest only "[i]f [my wife Sharon] does not survive me." Moreover, the Kerr court said (1) the Minnesota Legislature could have, but had not, enacted legislation to revoke gifts to relatives of a former spouse, and (2) a testator will not necessarily be estranged from relatives of a former spouse. (Id. at p. 514.) In contrast, in California we have an opposing expression of policy in Hermon's holding that "when a testator provides for his spouse's children, he normally intends to exclude children of an ex-spouse after dissolution, unless a contrary intention is indicated elsewhere in his will." (Hermon, supra, 39 Cal.App.4th 1525, 1531, 46 Cal.Rptr.2d 577.) If we were to ascribe any meaning to legislative inaction  which is a "weak reed upon which to lean" (Lantzy v. Centex Homes (2003) 31 Cal.4th 363, 382, 2 Cal.Rptr.3d 655, 73 P.3d 517)  it would be that legislative inaction may reflect endorsement of Hermon.
Appellant contends the will contains additional evidence that the testator intended his bequests to go to her and her sister as named individuals, not as a class, because other bequests to individuals contained relationship identifiers, e.g., "to my sister Susan Peddy," and "[t]o my nephew Clayton Peddy." However, this argument provides no indication of an intent to include adult children of an ex-spouse after divorce.
In further support of her argument about the residuary clause, appellant points out that the will's subsequent reference to her by name as contingent executor did not repeat the relationship identifier of "stepdaughter." According to appellant, the omission meant the testator intended appellant to be contingent executor whether or not she was his stepdaughter when he died, and it is unlikely he meant her to be executor but not a beneficiary. We disagree. The lack of a relationship identifier in the second reference to appellant in the one-page will, after having identified her relationship in the immediately-preceding paragraph, is without consequence.
We conclude appellant fails to show grounds for reversal with respect to the residuary clause.
In reaching this conclusion, we acknowledge that, in this case, the only extrinsic evidence admitted on the testator's intent was the martial settlement agreement, the contents of which cut against appellant's position. We can imagine a case reaching a different result where extrinsic evidence showed that the testator had a relationship with a child of a divorced spouse that continued following the divorce, thereby showing an intent by the testator to continue to have the child take under the will. However, no such evidence was adduced in this case. Moreover, we think that, since the testator was dead, the burden of producing evidence of such a continuing relationship fell naturally upon appellant. "`Where the evidence necessary to establish a fact essential to a claim lies peculiarly within the knowledge and competence of one of the parties, that party has the burden of going forward with the evidence on the issue. . . .'" (Sanchez v. Unemployment Ins. Appeals Bd. *645 (1977) 20 Cal.3d 55, 71, 141 Cal.Rptr. 146, 569 P.2d 740, quoting Morris v. Williams (1967) 67 Cal.2d 733, 760, 63 Cal.Rptr. 689, 433 P.2d 697; see People v. Atwood (2003) 110 Cal.App.4th 805, 812, 2 Cal.Rptr.3d 67; Short v. Nevada Joint Union High School Dist. (1985) 163 Cal.App.3d 1087, 1099, 210 Cal.Rptr. 297.)
In this case, if appellant enjoyed a continuing relationship with the testator in the eight years between his divorce and his death, we would have expected her to introduce evidence to that effect. She did not. In these circumstances, where we are essentially construing the language of the will without benefit of significant extrinsic evidence, we are constrained to agree with Estate of Hermon, supra, 39 Cal.App.4th at page 1531, 46 Cal.Rptr.2d 577, that "when a testator provides for his spouse's children, he normally intends to exclude children of an ex-spouse after dissolution. . . ."
So it is here.

III. Executor

Appellant contends the trial court erred in holding she lacked standing to challenge the appointment of Peddy as administrator. We shall conclude there is no basis for reversal.
Appellant cites section 8420, which provides, "The person named as executor in the decedent's will has the right to appointment as personal representative." Appellant also cites Estate of Henderson (1925) 196 Cal. 623 at page 639, 238 P. 938 (Henderson), for the proposition that courts should honor a testator's intention that is not directly expressed but is reasonably deducible.
However, the issue in Henderson, supra 196 Cal. 623, 238 P. 938, was whether a testator, by requesting that a named individual "have charge of my affairs," meant for that person to be executor. Here, the testator named appellant only as a backup in the event appellant's mother could not serve as executor. The marital dissolution revoked the clause naming appellant's mother as executor. (§ 6122.) Appellant cites no authority supporting her claimed entitlement to be executor under these circumstances.
Moreover, appellant stipulated to have Peddy complete certain activities as administrator in the Stipulated Order dated June 9, 2003.
Finally, even assuming for the sake of argument that appellant may have a point that is not waived, appellant fails to show any prejudice requiring reversal. (Cal. Constitution, art. VI, § 13; Code Civ. Proc., § 475.)

DISPOSITION
The judgment and order are affirmed. Respondent shall recover his costs on appeal. (Cal. Rules of Court, rule 27(a)(1).)
We concur: SCOTLAND, P.J., and NICHOLSON, J.
NOTES
[1] Undesignated statutory references are to the Probate Code.
[2] In the marital settlement agreement, husband and wife agreed to "[r]elinquish any and all past, present or future claims that either party may have against the property or estate of the other party and his or her executors, heirs, administrators, representatives, successors, or assigns, except as is otherwise provided herein. [¶] . . . [¶] . . . This Agreement shall inure to the benefit of and be binding on each of the parties and their heirs, personal representative[s], assigns, and other successors in interest of each of the parties. . . . [¶] . . . [¶] . . . Husband and Wife each waive any and all rights to: [¶] 1. Receive property from the estate of the other by bequest or devise, except as provided in a Will or Codicil dated subsequent to the effective date of this Agreement. [¶] 2. Act as a personal representative of the estate of the other on intestacy. [¶] 3. Act as a personal representative under the Will of the other, unless so nominated by a Will or Codicil dated subsequent to the effective date of this Agreement."
[3] The declaration was submitted by appellant in connection with her assertion that Peddy hid the will.

Peddy also asserts on appeal that Jones had no connection with appellant after the divorce, but Peddy's only citation is to a trial brief which does not cite any evidence.