[No. C052807. Third Dist. Mar. 29, 2007.]

CHEVRON STATIONS, INC., Petitioner, v.
ALCOHOLIC BEVERAGE CONTROL APPEALS BOARD, Respondent;
DEPARTMENT OF ALCOHOLIC BEVERAGE CONTROL, Real Party in
Interest.

## COUNSEL

Solomon, Saltsman & Jamieson, Ralph Barat Saltsman, Stephen Warren Solomon and Ryan M. Kroll for Petitioner.

No appearance for Respondent.

Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, Jacob A. Appelsmith, Assistant Attorney General, Stacy Boulware-Eurie and Kimberly J. Graham, Deputy Attorneys General, for Real Party in Interest.

## OPINION

**SIMS, J.**—Following suspension of its license to sell beer and wine, Chevron Stations, Inc. (Chevron), petitions for review of an order of the Alcoholic Beverage Control Appeals Board (the Board) affirming the decision of the Department of Alcoholic Beverage Control (Department) under Business and Professions Code section 23090.[1] Chevron contends its rights under the Administrative Procedure Act (Gov. Code, § 11340 et seq. (APA))[2] and the due process clauses of the federal and state Constitutions were violated by an ex parte communication from the Department's prosecutor to the Department's decision maker before a decision was made whether to adopt the proposed decision of the administrative law judge (ALJ).

---

[1] Business and Professions Code section 23090 provides in part: "Any person affected by a final order of the board, including the department, may, within the time limit specified in this section, apply to the Supreme Court or to the court of appeal for the appellate district in which the proceeding arose, for a writ of review of such final order."

Although this statute refers to "the board," which according to the general definitions of the Alcoholic Beverage Control Act means the State Board of Equalization (Bus. & Prof. Code, § 23042), while "appeals board" means the Alcoholic Beverage Control Appeals Board (Bus. & Prof. Code, § 23045), these definitions do not govern if the context otherwise requires (Bus. & Prof. Code, § 23002). In context, it is clear that Business and Professions Code section 23090's reference to "board" means the Alcoholic Beverage Control Appeals Board. (See Bus. & Prof. Code, §§ 23076–23077 [referring to appeals board as "the board"].)

[2] Undesignated statutory references are to the Government Code.

We need not address the constitutional claim, because we shall conclude the APA was violated, pursuant to a recent California Supreme Court case, which held the APA is violated by the Department's practice of having the Department's prosecuting attorney send a "report of hearing" to the Department's decision maker before a final decision is made. (*Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd.* (2006) 40 Cal.4th 1 [50 Cal.Rptr.3d 585, 145 P.3d 462] (*Quintanar*).) Although the Department's decision maker rejected the ALJ's proposed decision in *Quintanar*, we shall conclude the APA is also violated even where, as here, the Department's decision maker decides to adopt the ALJ's proposed decision. Although the Department asserts it did not in this case use the practice condemned in *Quintanar*, the Department failed to adduce evidence substantiating its assertion before the Board. It may not do so for the first time in this court. We shall therefore reverse the Department's order of suspension of the license.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 8, 2004, a Chevron employee was caught selling beer to a "minor decoy" used by the Department and local police to enforce laws prohibiting the sale of alcohol to minors. (Cal. Const., art. XX, § 22; Bus. & Prof. Code, § 25658, subd. (f).[3]

On March 1, 2005, following an administrative hearing on February 24, 2005, an ALJ issued a proposed decision recommending that Chevron's beer and wine license be suspended for 15 days.

On April 14, 2005, the Department issued a "CERTIFICATE OF DECISION," adopting the ALJ's proposed decision.

Chevron appealed the decision to the Board, raising several contentions. In the only contention at issue in this court, Chevron argued that, after the ALJ hearing, the Department violated the APA and due process by adopting the ALJ's proposed decision after the Department decision maker received an ex parte communication (report of hearing) from the Department trial counsel who prosecuted the administrative case against Chevron. Chevron did not submit any evidence that such an ex parte communication actually occurred in this case, but instead cited unrelated Board cases involving the same issue (*Quintanar v. Department of Alcoholic Beverage Control* (Aug. 19, 2004) No. AB-8099; *KV Mart Co. v. Department of Alcoholic Beverage Control* (Aug.

---

[3] "Persons under the age of 21 years may be used by peace officers in the enforcement of [section 25658] to apprehend licensees, or employees or agents of licensees, who sell alcoholic beverages to minors." (Bus. & Prof. Code, § 25658, subd. (f).)

24, 2004) No. AB-8121; *Kim v. Department of Alcoholic Beverage Control* (Aug. 24, 2004) No. AB-8148, collectively the *Quintanar* cases), which acknowledged the Department's practice of having the Department's prosecutor prepare a form report of hearing and in which the Board assertedly determined: " 'At oral argument, the Department indicated that, in all likelihood, both the chief counsel and the headquarters attorney reviewing the ALJ's proposed decision would have received copies of the report to use in making their evaluations of the proposed decision.' " Chevron argued the Department's admission at oral argument in the *Quintanar* case was evidence that could be considered in Chevron's case. Chevron requested augmentation of the record to include the report of hearing concerning Chevron's administrative hearing (but the request was denied).

The Department filed with the Board an opposition brief that (1) did not dispute the report of hearing practice asserted by Chevron and (2) did not claim any change in practice to prevent the decision maker from seeing the report of hearing before making his or her decision.[4] Instead, the Department merely argued that the Board had held in other cases that *Quintanar* does not apply and there is no due process violation where (as here) the Department adopts the ALJ's proposed decision in its entirety, without a section 11517, subdivision (c), review.[5]

On March 20, 2006, the Board issued a decision rejecting the appeal. Regarding the matter of ex parte communications, the Board decided there was no due process violation because the Department adopted rather than rejected the ALJ's proposed decision. The Board did not separately address whether ex parte communication violated the APA. The Board acknowledged the line of cases led by *Quintanar*, which were under review by the California Supreme Court, in which the Board held due process was violated if the prosecuting attorney's report of hearing was provided to the decision maker. The Board said Chevron's case is different because in each of the *Quintanar*-type cases, the Department *rejected* the ALJ's proposed decision to dismiss the charges and issued its own decision imposing suspensions. In contrast, here the Department *adopted* the proposed decision of the ALJ in its entirety.

---

[4] It also does not appear that the Department raised these points verbally at the Board hearing. Though we have no transcript of the Board hearing, the Board's written decision mentioned only one factual difference between this case and *Quintanar*, i.e., that the decision maker in this case adopted rather than rejected the ALJ's proposed decision.

[5] The Department miscited this Government Code provision as being in the Business and Professions Code. Section 11517, subdivision (c), sets forth the Department's options regarding an ALJ's proposed decision, including the option for the Department to reject the ALJ's proposed decision and decide the case upon the record, including the transcript (or excluding the transcript, by stipulation), or upon an agreed statement of the parties, with or without taking additional evidence.

The Board said: "Where, as here, there has been no change in the proposed decision of the ALJ, we cannot say, without more, that there has been a violation of due process. Any communication between the advocate and the advisor or the decision maker after the hearing did not affect the due process accorded appellant at the hearing. Appellant has not alleged that the proposed decision of the ALJ, which the Department adopted as its own, was affected by any post-hearing occurrence. If the ALJ was an impartial adjudicator (and appellant has not argued to the contrary), and it was the ALJ's decision alone that determined whether the accusation would be sustained and what discipline, if any, should be imposed upon appellant, it appears to us that appellant received the process that was due to it in this administrative proceeding. Under these circumstances, and with the potential for an inordinate number of cases in which this due process argument could possibly be asserted, this Board cannot expand the holding in [the *Quintanar* cases]."

In view of this conclusion, the Board denied Chevron's request to augment the record with the report of hearing.

Chevron filed a petition for writ of review in the California Supreme Court, which transferred the case to us.

We issued a writ of review and stayed the Board decision pending consideration of the matter by this court.

## DISCUSSION

### I. Standard of Review

The Department and the Board are constitutional agencies. (Cal. Const., art. XX, § 22.) California Constitution, article XX, section 22, states in part: "When any person aggrieved thereby appeals from a decision of the department ordering any penalty assessment, issuing, denying, transferring, suspending or revoking any license for the manufacture, importation, or sale of alcoholic beverages, the board shall review the decision subject to such limitations as may be imposed by the Legislature. In such cases, the board shall not receive evidence in addition to that considered by the department. Review by the board of a decision of the department shall be limited to the questions whether the department has proceeded without or in excess of its jurisdiction, whether the department has proceeded in the manner required by law, whether the decision is supported by the findings, and whether the findings are supported by substantial evidence in the light of the whole record. In appeals where the board finds that there is relevant evidence which, in the exercise of reasonable diligence, could not have been produced or which was improperly excluded at the hearing before the department it may

enter an order remanding the matter to the department for reconsideration in the light of such evidence. In all other appeals the board shall enter an order either affirming or reversing the decision of the department. When the order reverses the decision of the department, the board may direct the reconsideration of the matter in the light of its order and may direct the department to take such further action as is specially enjoined upon it by law, but the order shall not limit or control in any way the discretion vested by law in the department. Orders of the board shall be subject to judicial review upon petition of the director or any party aggrieved by such order."

In this writ of review "[n]o new or additional evidence shall be introduced in [this] court, but the cause shall be heard on the whole record of the department as certified to by the board." (Bus. & Prof. Code, § 23090.1.)

"The review by the court shall not extend further than to determine, based on the whole record of the department as certified by the board, whether:

"(a) The department has proceeded without or in excess of its jurisdiction.

"(b) The department has proceeded in the manner required by law.

"(c) The decision of the department is supported by the findings.

"(d) The findings in the department's decision are supported by substantial evidence in the light of the whole record.

"(e) There is relevant evidence which, in the exercise of reasonable diligence, could not have been produced or which was improperly excluded at the hearing before the department.

"Nothing in this article shall permit the court to hold a trial de novo, to take evidence, or to exercise its independent judgment on the evidence." (Bus. & Prof. Code, § 23090.2.)

Business and Professions Code section 23090.3 states: "The findings and conclusions of the department on questions of fact are conclusive and final and are not subject to review. Such questions of fact shall include ultimate facts and the findings and conclusions of the department. The board, the department, and each party to the action or proceeding before the board shall have the right to appear in the review proceeding. Following the hearing, the court shall enter judgment either affirming or reversing the decision of the department, or the court may remand the case for further proceedings before or reconsideration by the department."

## II. APA Violation

While this writ proceeding was pending, the California Supreme Court issued its opinion in *Quintanar, supra,* 40 Cal.4th 1, holding the Department's procedure of having Department prosecutors submit ex parte reports of hearing to Department decision makers/delegees violated the APA. As encapsulated in its introduction, *Quintanar* said:

"The Department of Alcoholic Beverage Control (Department) has exclusive licensing authority over entities that sell alcoholic beverages. Its procedures for adjudicating whether licensees have violated the terms of their licenses include an evidentiary hearing at which a Department prosecutor makes the Department's case to an administrative law judge (ALJ), and a second level of decisionmaking in which the Department's director or a delegee decides whether to adopt the ALJ's proposed decision. In the three consolidated cases here, consistent with standard Department procedure, the prosecutor prepared a summary of the evidentiary hearing and recommended resolution, which he then provided ex parte to the ultimate decision maker or decision maker's adviser.

"While the state's administrative agencies have considerable leeway in how they structure their adjudicatory functions, they may not disregard certain basic precepts. One fairness principle directs that in adjudicative matters, one adversary should not be permitted to bend the ear of the ultimate decision maker or the decision maker's advisers in private. Another directs that the functions of prosecution and adjudication be kept separate, carried out by distinct individuals. California's Administrative Procedure Act (APA) (Gov. Code, § 11340 et seq.), [fn. omitted] as overhauled in 1995, adopts these precepts by regulating and strictly limiting contacts between an agency's prosecutor and the officers the agency selects to preside over hearings and ultimately decide adjudicative matters." (*Quintanar, supra,* 40 Cal.4th at pp. 4–5.) The Supreme Court concluded the Department's procedure violates the APA's bar against ex parte communications. (40 Cal.4th at p. 5.) The Supreme Court decided the case as a statutory matter and said it was not necessary to reach the question of constitutional due process. (*Id.* at p. 5, fn. 13.)

*Quintanar, supra,* 40 Cal.4th 1, described the Department and its procedures:

■ "The Department is a unitary agency with the exclusive authority to license the sale of alcoholic beverages in California and to suspend or revoke licenses. (Cal. Const., art. XX, § 22.) As a unitary agency, it carries out multiple functions: 'It is in the nature of administrative regulatory agencies that they function both as accuser and adjudicator on matters within their particular jurisdiction. Administrative agencies are created to interpret and enforce the legislative enactments applicable to the field in which they operate. That role necessarily involves the administrative agency in both determining when a licensee is in violation of the law, and taking action to correct such violations.' [Citation.]

"Like many state administrative agencies, [fn. omitted] the Department exercises its adjudicatory power through a two-stage process. In the first (trial) stage, a Department staff attorney, acting as prosecutor, and the licensee present their respective cases to an ALJ at an evidentiary hearing. The ALJ then makes factual findings, prepares a proposed decision, and submits it to the Department. (See § 11517, subd. (c)(1).) In the second (decision) stage, the Department's director or a delegee considers the proposed decision and elects to adopt it, modify it, reject it and remand for a new hearing, or reject it and decide the case on the record. (*Id.*, subd. (c)(2).)" (*Quintanar, supra*, 40 Cal.4th 1, 5–6.)

In each of the three cases at issue in *Quintanar* the ALJ issued a proposed decision to dismiss the accusations against three licensees. After the close of each administrative hearing but before the Department rendered its decision, the Department prosecutor prepared a form document called report of hearing, and apparently sent it to the Department's chief counsel, but not to any of the licensees. (*Quintanar, supra*, 40 Cal.4th at p. 5.) The reports were not part of the record in *Quintanar* (the Department having refused the Board's command to produce them), but copies of the generic form were part of the record. The generic form provided space for the prosecutor to summarize the issues and the evidence presented at the hearing and to recommend, with supporting reasons, a particular disposition of the case. (*Ibid.*) In each of the three cases at issue in *Quintanar* the Department rejected the ALJ's proposed decision to dismiss the accusation and substituted its own decision suspending the licenses of the three licensees for 15 to 25 days. (*Ibid.*)

■ The Supreme Court concluded the APA's article 7 (§§ 11430.10–11430.80) prohibits ex parte contacts between an agency's prosecutor and its ultimate decision maker or his/her advisers about the

substance of the case, prior to the ultimate decision maker rendering a final decision. (*Quintanar, supra,* 40 Cal.4th at p. 5.) Thus, as explained in *Quintanar:* " 'While the proceeding is pending there shall be *no communication, direct or indirect, regarding any issue in the proceeding,* to the presiding officer from an employee or representative of an agency that is a party . . . without notice and opportunity for all parties to participate in the communication.' (§ 11430.10, subd. (a), italics added.) A 'presiding officer' is defined as an officer who presides over an evidentiary hearing (§ 11405.80), but other provisions of article 7 expressly extend this prohibition to all decision makers, including agency heads and their delegees, whether or not they preside over an evidentiary hearing: 'Subject to subdivision (b) [governing ratemaking proceedings], the provisions of this article governing ex parte communications to the presiding officer also govern ex parte communications in an adjudicative proceeding to the agency head or other person or body to which the power to hear or decide in the proceeding is delegated.' (§ 11430.70, subd. (a).) [Fn. omitted.]" (*Quintanar, supra,* 40 Cal.4th 1, 9.)

*Quintanar* noted two other provisions which slightly narrow section 11430.10's blanket prohibition. First, section 11430.20, subdivision (b), permits communications regarding uncontroversial procedural matters. Second, section 11430.30, subdivision (a),[6] allows an agency decision maker to receive advice from *nonadversarial* agency personnel. (*Quintanar, supra,* 40 Cal.4th 1, 10.)

▪ The Supreme Court said: "None of the exceptions permit prosecutors and other adversarial agency employees to have off-the-record contact about substantive issues with the agency head, or anyone to whom the agency head delegates decisionmaking authority, during the pendency of an adjudicative proceeding. Thus, the APA sets out a clear rule: An agency prosecutor cannot secretly communicate with the agency decision maker or the decision maker's adviser about the substance of the case prior to issuance of a final decision. [Fn. omitted.]

---

[6] Section 11430.30, provides in part: "A communication otherwise prohibited by Section 11430.10 from an employee or representative of an agency that is a party to the presiding officer [or decision maker, pursuant to section 11430.70] is permissible in any of the following circumstances: [¶] (a) The communication is for the purpose of assistance and advice to the presiding officer from a person who has not served as investigator, prosecutor, or advocate in the proceeding or its preadjudicative stage. An assistant or advisor may evaluate the evidence in the record but shall not furnish, augment, diminish, or modify the evidence in the record."

"This rule enforces two important procedural precepts. First, it promotes neutral decisionmaking by requiring a limited internal separation of functions. Procedural fairness does not mandate the dissolution of unitary agencies, but it does require some internal separation between advocates and decision makers to preserve neutrality. [Citations.] Second, the rule preserves record exclusivity. 'The decision of the agency head should be based on the record and not on off-the-record discussions from which the parties are excluded.' [Citations.]" (*Quintanar, supra*, 40 Cal.4th 1, 10–11.)

The Supreme Court determined from the legislative history that, despite a general provision's narrow definition of "adjudicative proceeding," section 11430.70 was intended to apply more broadly to limit ex parte contacts in all proceedings (except for statutorily excluded ratemaking proceedings) that employ an evidentiary hearing in the course of adjudicating the rights of a party. (*Quintanar, supra*, 40 Cal.4th 1, 12–15.)

In *Quintanar, supra*, 40 Cal.4th 1, the Department argued section 11517, which gives agencies wide latitude to structure adjudicative proceedings, allows the Department to have Department prosecutors advise Department decision makers. (40 Cal.4th at p. 16.) The Department cited a California Law Revision Commission comment to a former version of section 11517, commenting that nothing in the statute was intended to limit the agency's authority to use its own internal procedures, including internal review processes, in the development of a decision. (40 Cal.4th at p. 14, fn. 10.) The Supreme Court said, "Section 11517 is beside the point. The Department may structure its decisionmaking however it sees fit, so long as it complies with the APA and related statutory and constitutional minimums. Nothing in either the superseded or current version of section 11517 purports to authorize procedures that run afoul of proscriptions spelled out elsewhere in the Government Code." (*Id.* at p. 14.)

The Supreme Court also noted prior case law approving use of a confidential report of hearing procedure had been superseded by statute. (*Quintanar, supra*, 40 Cal.4th 1, 16.)

Applying the APA to the Department's reports of hearing, the Supreme Court said that, although the Department had refused to produce the reports for the three cases before the court, the Department conceded a report of hearing was prepared in each case and conceded the final decision in each case was made by either the Department's director or its chief counsel, and

that both had access to the reports. (*Quintanar, supra*, 40 Cal.4th 1, 15.) In light of the concessions, the Supreme Court considered it established that the reports were provided to the agency's decision maker. (*Ibid.*) The Supreme Court said it did not matter whether the decision maker actually considered the reports. (*Id.* at p. 16.) "Whether the decision maker considered the reports of hearing is in any event beside the point. On the one hand, proof as to how a particular ex parte contact weighed in an agency decision maker's calculus would be impossible to come by without inquiry into matters beyond the ken of any court. On the other hand, the APA does not require such proof; perhaps because such proof is unattainable, the APA prophylactically outlaws any substantive communications or advice from an agency prosecutor to an agency decision maker. The party faced with such a communication need not prove that it was considered; conversely, the agency engaging in ex parte discussions cannot raise as a shield that the advice was *not* considered. Under the APA, the mere submission of ex parte substantive comments, without more, is illegal. (§ 11430.10, subd. (a).) If reports of hearing were submitted by the Department's prosecutors to its final decision maker or decision maker's advisers, as the Department concedes, this violated the APA." (*Quintanar, supra*, 40 Cal.4th at p. 16.)

The Supreme Court said its decision did not deprive decision makers of the advice of others within the agency. The decision maker was free to speak with anyone in the agency and solicit and receive advice from whomever he or she pleased, except the personnel who served as prosecutor in the specific case. (*Quintanar, supra*, 40 Cal.4th 1, 17.) The agency head could even contact the prosecutor to discuss settlement or direct dismissal. (*Ibid.*) The only contact forbidden was that a prosecutor could not communicate off the record with the agency decision maker (or his/her advisers) about the substance of the case. (*Ibid.*)

The Supreme Court declined to express any opinion as to constitutional due process principles, because the case was fully decided based on the statutes. (*Quintanar, supra*, 40 Cal.4th 1, 17, fn. 13.)

As to remedy, the Supreme Court said that reversal of the Department's license-suspension orders was required as the remedy for violation of the APA's administrative adjudication bill of rights. (*Quintanar, supra*, 40 Cal.4th 1, 17.) The Supreme Court said, however, the further remedy ordered by the Court of Appeal—mandatory screening procedures barring contacts between prosecutors and decision makers and precluding use of reports of hearing in future cases—was overbroad. The APA bars only ex parte contacts, not all

contacts. Nothing in the APA precluded the ultimate decision maker from considering posthearing briefs submitted by, and served on, each side. The Department thus can choose to continue to use the report of hearing procedure, as long as it provides licensees a copy of the report and the opportunity to respond. (40 Cal.4th at p. 17.)

In the case before us, the Department does not dispute its practice of having its prosecutors prepare reports of hearing before its decision makers act on the ALJs' proposed decisions. Rather, the Department asserts for the first time that it changed its practice before Chevron's case and no longer allows the decision makers or their advisers to see the reports of hearing. The Department also argues Chevron never proved an ex parte communication but instead has improperly relied on speculation. The Department argues, "all that has been submitted by Chevron to support its assertion is [its attorney's] verification [verifying the petition], which is based only on information and belief."

■ We shall conclude Chevron adequately established an APA violation, and it was the Department's burden to show a change in departmental practice—a burden which the Department failed to meet.

Thus, in its appeal to the Board, Chevron asserted that, pursuant to departmental practice acknowledged in other Board decisions (the *Quintanar* cases, *supra*, AB-8009, AB-8121, AB-8148), the Department's prosecutor prepared a report of hearing after the ALJ hearing which would have been received by the Department's decision maker before he or she made a decision on the ALJ's proposed decision. Indeed, this was described in *Quintanar* as "standard Department procedure." (*Quintanar, supra*, 40 Cal.4th 1, 5.) Although Chevron did not expressly assert it failed to receive a copy of the report (for which it sought augmentation from the Department's file) or opportunity to respond, the Department's supplemental brief to this court (discussing the Supreme Court's *Quintanar* opinion) states, "it is true that [Chevron] was not offered the opportunity to submit a posthearing brief to the ultimate decisionmaker . . . ."[7] Thus, Chevron sufficiently made out a prima facie case of an APA violation for ex parte communication.

The Department says Chevron has not provided this court with any reason to assume that the factual scenario alleged in *Quintanar, supra*, 40 Cal.4th 1, occurred in this case. The Department argues there is no basis on which to

---

[7] The Department's supplemental brief claims it also was not offered an opportunity to submit a posthearing brief. This flawed assertion is based on the Department's claim that no ex parte communication occurred at all.

assume that any of the material facts in *Quintanar* are present in this case. However, the point we take from *Quintanar* is not a fact unique to the licensees involved in that case but rather a "standard Department procedure" (indeed, a procedure which the Department did not dispute or disavow during Chevron's appeal to the Board). Moreover, *Quintanar* said an agency could not avoid an APA violation by presenting evidence that no harm was done in a particular case, i.e., that the report was not actually considered by the decision maker or his/her advisers in a particular case. (40 Cal.4th at p. 16.) Thus, contrary to the Department's argument, Chevron did not have the burden to prove that the report of (Chevron's) hearing was actually considered by the decision maker.

We conclude Chevron made a prima facie case of an APA violation, i.e., it was standard Department procedure for the Department's prosecuting attorney to furnish a report of hearing ex parte to the Department's decision maker.

 Where a petitioner makes out a prima facie case, the burden is thrown on the opponent to refute it. (*Lotus Car Ltd. v. Municipal Court* (1968) 263 Cal.App.2d 264, 270 [69 Cal.Rptr. 384].) Additionally, " ' "[w]here the evidence necessary to establish a fact essential to a claim lies peculiarly within the knowledge and competence of one of the parties, that party has the burden of going forward with the evidence on the issue . . . ." ' " (*Estate of Jones* (2004) 122 Cal.App.4th 326, 337 [18 Cal.Rptr.3d 637]; see *Howitt v. Superior Court* (1992) 3 Cal.App.4th 1575, 1587 [5 Cal.Rptr.2d 196] [county counsel's office served as both advocate and adviser to decision maker in case before county employment appeals board].)

Here, the Department claims it changed its procedure after the 2004 Board decision in the *Quintanar* line of cases and now keeps the reports of hearing away from the decision makers. The Department would have unique knowledge of such a change in its departmental procedure and had the burden of producing evidence showing such a change.

*Yet the Department did not adduce such evidence or even claim a change of practice in the proceedings before the Board, even though Chevron clearly raised the issue before the Board.*

 The Department could have asked the Board to consider such evidence. Thus, we recognize the Constitution[8] and Business and Professions

---

[8] California Constitution, article XX, section 22, provides in part that "the board shall not receive evidence in addition to that considered by the department. Review by the board of a decision of the department shall be limited to the questions whether the department has proceeded without or in excess of its jurisdiction, whether the department has proceeded in the

Code section 23083[9] limit the Board to consideration of evidence contained in the record of the proceedings before the Department. However, *Quintanar, supra,* 40 Cal.4th 1, indicated the Board has the authority to consider extra-record evidence in these circumstances. Thus, *Quintanar* said in dictum that the Board had the authority to order the Department to disclose the report of hearing, even though it was not part of the record. The Supreme Court said the Board was "constitutionally empowered to determine whether the Department had issued its decision in compliance with all laws, including the APA.[10] (Cal. Const., art. XX, § 22.) While it is true . . . that the Constitution also limits the Board to consideration of the record before the Department (*ibid.*), we [the Supreme Court] must harmonize these two provisions to the extent possible so that the limit imposed by one clause does not destroy the power granted by the other. [Citation.] We interpret the record limit as applying to prevent parties from relitigating substantive matters by submitting new evidence, but not to prevent the Board from carrying out its obligation to determine whether the Department has complied with the law. The Department argues that ex parte contacts are not in the record (a virtual tautology) and thus the Board cannot consider them or direct that they be added to the record, whether or not the Department has considered them; if this is so, then the Department may violate the APA without sanction. To read this clause as the Department does, as further precluding inquiry into ex parte communications, would render the APA as it applies to the Department, and the Board's constitutional authority to ensure compliance, a dead letter. We reject such a seemingly absurd result." (*Quintanar, supra,* 40 Cal.4th 1, 15–16, fn. 11.)

Thus, the Department could have defended itself before the Board by showing a change in its practice regarding reports of hearing. Yet this was not the defense presented by the Department at the level of Board review. Before the Board, the Department merely argued that the Board had held in other cases that ex parte communication of the report of hearing resulted in no due process violation if (as in this case) the Department adopts the ALJ's

---

manner required by law, whether the decision is supported by the findings, and whether the findings are supported by substantial evidence in the light of the whole record. In appeals where the board finds that there is relevant evidence which, in the exercise of reasonable diligence, could not have been produced or which was improperly excluded at the hearing before the department it may enter an order remanding the matter to the department for reconsideration in the light of such evidence."

[9] Business and Professions Code section 23083, subdivision (a), says, "The board shall determine the appeal upon the record of the department and upon any briefs which may be filed by the parties. . . . The board shall not receive any evidence other than that contained in the record of the proceedings of the department."

[10] The Board is also *statutorily* empowered to determine "[w]hether the department has proceeded in the manner required by law." (Bus. & Prof. Code, § 23084.)

proposed decision in its entirety. However, it is clear from the reasoning of the Supreme Court in *Quintanar, supra*, 40 Cal.4th 1, that it does not make any difference that the Department decision maker in this case adopted rather than rejected the ALJ's proposed decision. The Department decision maker could have been influenced to affirm the ALJ by the ex parte communication from the Department's prosecuting attorney.

The Department attempts to submit new evidence to this court, in the form of a verification (with attachments) of its chief counsel, John R. Peirce, attached to the Department's opposition to Chevron's writ petition.

However, as stated, *ante*, our review is limited to the record before the Board, and we cannot consider new evidence. (Bus. & Prof. Code, §§ 23090.1–23090.2.)

Even assuming we have the authority to receive and consider new evidence, we would not do so in this case. The Department has proffered no reason why it did not litigate this issue before the Board, where Chevron clearly tendered the issue of ex parte communication. The Court of Appeal is not the proper forum to litigate this dispute in the first instance.

We therefore disregard the new evidence proffered by both sides and find it unnecessary to consider whether to grant judicial notice of nonpublished or pending, unrelated cases. We also conclude it is unnecessary to remand the case to the Board for new evidence, as suggested by Chevron in the event we wish to consider the new evidence.

We conclude the APA was violated, requiring reversal of the Department's order of license suspension. (*Quintanar, supra*, 40 Cal.4th 1, 17; Bus. & Prof. Code, § 23090.3.)[11]

We deny the Department's request that we impose sanctions against Chevron and its attorney for filing this petition without a good faith belief that the Department's prosecuting attorney communicated with the decision maker.

---

[11] Business and Professions Code section 23090.3 provides in part that, following judicial review, "the court shall enter judgment either affirming or reversing the decision of the department, or the court may remand the case for further proceedings before or reconsideration by the department."

## DISPOSITION

The Department of Alcoholic Beverage Control's decision to suspend Chevron Stations, Inc.'s license is reversed and the cause is remanded to the Alcoholic Beverage Control Appeals Board for further proceedings. (Bus. & Prof. Code, § 23090.3.) The stay we imposed on June 15, 2006, shall be dissolved as of the date this opinion becomes final. Chevron shall recover its costs in this writ proceeding. (Cal. Rules of Court, rule 8.490(*l*).)

Scotland, P. J., and Hull, J. concurred.

On April 2, 2007, the opinion was modified to read as printed above.