[No. H030292. Sixth Dist. May 15, 2007.]

MARCO A. RONDON, Petitioner, v.
ALCOHOLIC BEVERAGE CONTROL APPEALS BOARD, Respondent;
DEPARTMENT OF ALCOHOLIC BEVERAGE CONTROL, Real Party in
Interest.

1276

1278

---

**COUNSEL**

Solomon Saltsman & Jamieson, Ralph Barat Saltsman and Stephen Warren Solomon for Petitioner.

Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, James M. Humes and David S. Chaney, Chief Assistant Attorneys General, Jacob A. Appelsmith, Assistant Attorney General, Miguel A. Neri, Fiel D. Tigno and Mary Susan Cain-Simon, Deputy Attorneys General, for Respondent.

No appearance for Real Party in Interest.

## OPINION

**McADAMS, J.**—We issued a writ of review in this matter to consider an administrative decision revoking the petitioner's liquor license. Applying recent California Supreme Court precedent,[1] we now reverse the revocation.

## BACKGROUND

The petitioner here is Marco A. Rondon (Rondon), holder of an on-sale beer and wine license for his business, Andiamo Pizza & Cafe. Respondents are the Department of Alcoholic Beverage Control (the Department), which revoked petitioner's license, and the Alcoholic Beverage Control Appeals Board (the Board), which affirmed the revocation.

### Administrative Proceedings

In July 2004, the Department filed an accusation against Rondon, seeking revocation of his license based on several allegations, including his 2002 conviction by plea for misdemeanor theft, which the Department deemed an offense involving moral turpitude. In November 2004, the Department filed an amended accusation with a single count, asserting Rondon's 2002 theft conviction as evincing moral turpitude.

In January 2005, an adjudicatory administrative hearing on the accusation was conducted by an administrative law judge (ALJ). In February 2005, the ALJ issued a proposed decision, finding that Rondon's 2002 conviction involved moral turpitude and thus constituted grounds for discipline. (See Cal. Const., art. XX, § 22; Bus. & Prof. Code, § 24200, subd. (d).) The ALJ concurred in the Department's recommendation for outright revocation of the license. He nevertheless concluded that less severe punishment might be warranted by evidence of rehabilitation, which Rondon failed to provide.

In March 2005, the Department adopted the ALJ's proposed decision, certifying that decision as its own. It thus revoked Rondon's license.

In April 2005, Rondon appealed the Department's decision to the Board. Among other things, he asserted that the Department violated his due process rights based on ex parte communication between the Department's prosecuting attorney and its decision maker. The challenged ex parte communication was a "Report of Hearing," which Rondon claims was provided by the prosecuting attorney after the hearing but before the Department issued its certified decision.

---

[1] See *Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd.* (2006) 40 Cal.4th 1 [50 Cal.Rptr.3d 585, 145 P.3d 462] (hereafter, *Quintanar*).

In May 2006, the Board filed its decision in Rondon's administrative appeal, affirming the Department's license revocation decision. Although the Board acknowledged—as a general principle—that a due process violation results when the Department's prosecuting attorney communicates ex parte with its decision maker, the Board found against petitioner in this particular case, since the Department adopted the ALJ's proposed decision without additions or changes.

*Judicial Proceedings*

Rondon promptly sought judicial review by direct petition to the California Supreme Court. (See Bus. & Prof. Code, § 23090.) He also sought a stay.

In June 2006, the high court transferred Rondon's petition for writ of review to us. We issued a temporary stay. We also invited opposition from respondents, with an opportunity for petitioner to reply. Both sides submitted letter briefs.

In August 2006, we issued a writ ordering the Board to certify and return to this court any additional materials in the administrative record not contained in Rondon's petition. The Board submitted a certified record on appeal. As permitted by our order issuing the writ of review, the Department submitted a formal written return, which it called a "supplemental brief." Rondon did not submit any further reply.

Oral argument in this matter was scheduled for April 19, 2007. On April 17th, the Department submitted a document entitled "Notice of Withdrawal of Opposition to Petition for Writ of Mandate." In an accompanying letter, the Department informed us that it would "dismiss its disciplinary action against Mr. Rondon, which is the basis for the Petition for Writ of Mandate." The Department's letter also advised us that it was withdrawing both its request for sanctions and its request for oral argument. We agreed only to take the matter off the oral argument calendar.

Rejecting the Department's belated request to withdraw its opposition to Rondon's petition, we shall reach the merits of the controversy. (Cf. *Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist.* (2003) 106 Cal.App.4th 1219, 1227, fn. 2 [132 Cal.Rptr.2d 57] [court is "not required to dismiss the appeal on stipulation at this stage"].) Having considered the parties' written submissions and pertinent legal authority, we now reverse the Department's decision to revoke Rondon's license.

## DISCUSSION

We begin by describing the nature and function of the Department and the Board. Next, we summarize the legal principles that inform our analysis. Finally, we apply those principles to the case before us.

### I. *The Agencies*

■ Both the Department and the Board are "constitutional agencies upon which limited judicial powers have been conferred." (*Walker v. Munro* (1960) 178 Cal.App.2d 67, 73 [2 Cal.Rptr. 737]; see also *Martin v. Alcoholic Bev. etc. Appeals Bd.* (1959) 52 Cal.2d 238, 241–242 [340 P.2d 1].)

### A. *The Department*

■ The Department "has exclusive licensing authority over entities that sell alcoholic beverages." (*Quintanar, supra,* 40 Cal.4th at p. 4; see Cal. Const., art. XX, § 22.) Thus, by constitutional provision, it is within the Department's authority "to deny, suspend or revoke any specific alcoholic beverages license if it shall determine for good cause that the granting or continuance of such license would be contrary to public welfare or morals, or that a person seeking or holding a license has violated any law prohibiting conduct involving moral turpitude." (Cal. Const., art. XX, § 22.) Pursuant to a complementary statute, "grounds that constitute a basis for the suspension or revocation of licenses" include a "plea, verdict, or judgment of guilty, or the plea of nolo contendere to any public offense involving moral turpitude. . . ." (Bus. & Prof. Code, § 24200, subd. (d).)

### B. *The Board*

The Board has administrative appellate jurisdiction over decisions of the Department: "When any person aggrieved thereby appeals from a decision of the department ordering any penalty assessment, issuing, denying, transferring, suspending or revoking any license for the manufacture, importation, or sale of alcoholic beverages, the board shall review the decision subject to such limitations as may be imposed by the Legislature." (Cal. Const., art. XX, § 22.) "In such cases, the board shall not receive evidence in addition to that considered by the department. Review by the board of a decision of the department shall be limited to the questions whether the department has proceeded without or in excess of its jurisdiction, whether the department has proceeded in the manner required by law, whether the decision is supported by the findings, and whether the findings are supported by substantial evidence in the light of the whole record." (*Ibid.*)

## II. *Administrative Hearing Procedure*

■ When the Department initiates license revocation or other discipline by accusation, the proceedings are governed by California's Administrative Procedure Act (APA). (Bus. & Prof. Code, § 25750; see Gov. Code, §§ 11340–11529 [codifying the APA].) "The APA covers both (1) administrative regulations and rulemaking ([Gov. Code,] §§ 11340–11357), and (2) administrative adjudications ([Gov. Code,] §§ 11400–11529)." (*California Youth Authority v. State Personnel Bd.* (2002) 104 Cal.App.4th 575, 589 [128 Cal.Rptr.2d 514].) Only the latter is at issue here.

### A. *Hearing*

■ In proceedings conducted under the APA, "an ALJ may hear a contested case." (*Automotive Management Group, Inc. v. New Motor Vehicle Bd.* (1993) 20 Cal.App.4th 1002, 1013 [24 Cal.Rptr.2d 904], citing Gov. Code, § 11517, subd. (b).) As an alternate to using an administrative law judge, the Department may appoint its "agency head, member of the agency head, hearing officer, or other person [to] preside[] in an adjudicative proceeding." (Gov. Code, § 11405.80 [defining "presiding officer"].)

The ALJ or other presiding officer conducts "an evidentiary hearing at which a Department prosecutor makes the Department's case" against the licensee. (*Quintanar, supra,* 40 Cal.4th at p. 5.) By statute, within 30 days after the case is submitted, the presiding officer must prepare " 'a proposed decision in such form that it may be adopted as the decision in the case. The agency itself may adopt the proposed decision in its entirety, or may reduce the proposed penalty and adopt the balance of the proposed decision.' " (*Automotive Management Group, Inc. v. New Motor Vehicle Bd., supra,* 20 Cal.App.4th at p. 1013; see Gov. Code, § 11517, subd. (b).)

### B. *Administrative Decision*

■ After the ALJ or other presiding officer issues a proposed decision, there is "a second level of decisionmaking in which the Department's director or a delegee decides whether to adopt the ALJ's proposed decision." (*Quintanar, supra,* 40 Cal.4th at p. 5.) Alternatively, the Department may modify the decision, "reject it and remand for a new hearing, or reject it and decide the case on the record." (*Id.* at p. 6, citing Gov. Code, § 11517, subd. (c)(2).)

The final decision by the Department is then "subject to administrative review by the Board." (*Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd.* (2002) 100 Cal.App.4th 1066, 1071 [123 Cal.Rptr.2d 278] (*Deleuze*), citing Bus. & Prof. Code, § 23084.)

## C. *Judicial Review*

"After the Board has issued a final order, the Department's decision is also subject to judicial review in the Supreme Court or the Court of Appeal." (*Deleuze, supra,* 100 Cal.App.4th at p. 1071, citing Bus. & Prof. Code, § 23090.2.) The procedural vehicle by which review is obtained is a petition for writ of review, which may be brought in the Supreme Court or in the courts of appeal. (See Bus. & Prof. Code, § 23090.) The writ of review is also called certiorari. (Code Civ. Proc., § 1067.)

### 1. *Scope of Review*

"The scope of review of both the Board and the courts is a narrow one." (*Delueze, supra,* 100 Cal.App.4th at p. 1071; see Cal. Const., art. XX, § 22; Bus. & Prof. Code, § 23084.) As relevant here, "we confine our review to the question whether the Department 'has proceeded in the manner required by law.' " (*Quintanar, supra,* 40 Cal.4th at p. 7.) "We evaluate the decision of the Department in light of the jurisdiction of the Department and the legislative purposes of the Act." (*Delueze, supra,* 100 Cal.App.4th at p. 1072.)

### 2. *Standards of Review*

Generally speaking, the Department's decision to revoke a liquor license is reviewed for an abuse of discretion. The Department has "broad discretion to revoke or suspend liquor licenses 'for good cause' if continuing the license would be 'contrary to public welfare or morals.' (Cal. Const., art. XX, § 22.) In the absence of a clear abuse of discretion, the courts will uphold the Department's decision to suspend a license for violation of the liquor laws." (*Provigo Corp. v. Alcoholic Beverage Control Appeals Bd.* (1994) 7 Cal.4th 561, 566 [28 Cal.Rptr.2d 638, 869 P.2d 1163].)

In contrast to the deference typically accorded Department decisions, some situations call for de novo review. As relevant here: "The ultimate determination whether an administrative proceeding was fundamentally fair is a question of law to be decided on appeal." (*Southern Cal. Underground Contractors, Inc. v. City of San Diego* (2003) 108 Cal.App.4th 533, 542 [133 Cal.Rptr.2d 527].)

### III. *Procedural Protections*

■ The Department is required to "proceed[] in the manner required by law." (Bus. & Prof. Code, § 23084, subd. (b).) That requirement implicates general due process rights as well as specific statutory protections.

### A. *Due Process. Rights*

■ "The protections of procedural due process apply to administrative proceedings [citation]; the question is simply what process is due in a given circumstance." (*Nightlife Partners, Ltd. v. City of Beverly Hills* (2003) 108 Cal.App.4th 81, 90 [133 Cal.Rptr.2d 234].) Thus, due process is a flexible concept that requires protections appropriate to the particular situation. (*Civil Service Assn. v. City and County of San Francisco* (1978) 22 Cal.3d 552, 561 [150 Cal.Rptr. 129, 586 P.2d 162].) "While the state's administrative agencies have considerable leeway in how they structure their adjudicatory functions, they may not disregard certain basic precepts." (*Quintanar, supra*, 40 Cal.4th at p. 5.)

### B. *Statutory Protections*

■ The APA contains its own "Administrative Adjudication Bill of Rights." (Gov. Code, tit. 2, div. 3, pt. 1, ch. 4.5, art. 6; see 2 Cal.Jur.3d (2007) Administrative Law, § 424.) "The administrative adjudication bill of rights provisions of the APA apply to Department license suspension hearings." (*Quintanar, supra*, 40 Cal.4th at p. 15.) Among the statutory protections are: (1) separation of adjudicative and prosecutorial functions, and (2) restrictions on ex parte communications. (*Quintanar, supra*, 40 Cal.4th at pp. 9–10.)[2]

---

[2] Concerning the separation of functions, the statute provides: "The adjudicative function shall be separated from the investigative, prosecutorial, and advocacy functions within the agency as provided in Section 11425.30." (Gov. Code, § 11425.10, subd. (a)(4).) The referenced section states in pertinent part: "(a) A person may not serve as presiding officer in an adjudicative proceeding in any of the following circumstances: [¶] (1) The person has served as investigator, prosecutor, or advocate in the proceeding or its preadjudicative stage." (Gov. Code, § 11425.30.) With respect to ex parte communications, the statute reads: "Ex parte communications shall be restricted as provided in Article 7 (commencing with Section 11430.10)." (Gov. Code, § 11425.10, subd. (a)(8).) According to the referenced section: "While the proceeding is pending there shall be no communication, direct or indirect, regarding any issue in the proceeding, to the presiding officer from an employee or representative of an agency that is a party or from an interested person outside the agency, without notice and opportunity for all parties to participate in the communication." (Gov. Code, § 11430.10, subd. (a).)

## IV. *Analysis*

At issue here is a claimed practice by the Department of allowing the ultimate decision maker ex parte access to the report of hearing prepared by the prosecuting attorney. As disclosed in the parties' written submissions to this court, there is a factual dispute about whether that practice actually took place in this case.

### A. *The Parties' Factual Dispute*

In his petition, Rondon contends that "the prosecutor in this administrative hearing provided a form written communication to the decision-maker pertaining to the facts and process of the administrative hearing."[3] But the petition itself provides no declaration or other evidentiary support for that contention.

#### 1. *The Department's Evidence*

In connection with its informal opposition to Rondon's petition, filed in this court, the Department submitted a declaration from John Peirce, who supervises the Department's Hearing and Legal Unit. Peirce declares: "My instructions to my staff attorneys are that, if they prepare a Report of Hearing (ABC-104), it is not to be sent to the Director, to me or to the Hearing and Legal Unit and the official file." He further declares: "My instructions to the Hearing and Legal Unit are that if they receive a Report of Hearing in error, it is not to be given to the Director, to me or to be placed in the official hearing file but is to be returned to the attorney who prepared it." Peirce also declares: "I have personally reviewed the file in this matter. There is **no** Report of Hearing in the File, nor any other memo or communication prepared by the prosecuting attorney. The attorney who presented this case did not communicate in any manner with me regarding this case. On information and belief, the attorney who prosecuted this case did not communicate in any fashion with the independent attorney who reviewed the Proposed Decision or with the Director about this case."

#### 2. *Rondon's Response*

In his reply to the Department's informal opposition, Rondon challenges the adequacy of Peirce's declaration.

---

[3] As reflected in the Board's decision, Rondon made the same contention in his administrative appeal. As that decision also reflects, Rondon moved to augment the record in his administrative appeal to include the report of hearing, a motion that the Board denied.

Rondon also includes declarations from three current or former Department prosecutors—Winters, Logan, and Lewis—who all confirm that they prepared such reports in other cases. All three declare: "I was not responsible for distributing the Report of Hearing; distribution was handled by staff in the Cerritos office." Logan and Lewis state that they "do not know who, if anyone, the Report of Hearing was distributed to." Winters goes further, acknowledging that in his particular case, "it does appear from a notation on the file that a copy of the Report of Hearing was sent to the Hearing and Legal Unit at the ABC Headquarters in Sacramento."

Based on the information contained in those three declarations, Rondon argues that the Department "failed to establish proper screening procedures" to ensure that its decision makers do not receive reports of hearing from its prosecutors.

### 3. *Propriety of Considering the Evidence*

 Writs of review are governed by Business and Professions Code section 23090.1, which provides: "No new or additional evidence shall be introduced in [the reviewing] court, but the cause shall be heard on the whole record of the department as certified to by the board." (See, e.g., *Chevron Stations, Inc. v. Alcoholic Beverage Control Appeals Bd.* (2007) 149 Cal.App.4th 116 [57 Cal.Rptr.3d 6] (*Chevron*).) This limitation is in keeping with the typical practice for writs of review. (See, e.g., 8 Witkin, Cal. Procedure (4th ed. 1997) Extraordinary Writs, § 261, p. 1057.)

 However, an exception to that limitation applies in this case, since the disputed evidence is not offered to undermine the Department's substantive factual findings; rather, its proffer is intended to shed light on whether the illegal practice in fact took place here. In *Quintanar,* the high court discussed Cal. Const., art. XX, § 22, which "limits the Board to consideration of the record before the Department . . . ." (*Quintanar, supra,* 40 Cal.4th at p. 15, fn. 11; see also, Bus. & Prof. Code, § 23083 [similar statutory limitation on the record before the Board].) In dicta, the court said: "We interpret the record limit as applying to prevent parties from relitigating substantive matters by submitting new evidence, but not to prevent the Board from carrying out its obligation to determine whether the Department has complied with the law." (*Quintanar,* at p. 15, fn. 11.) By parity of reasoning, the use of extra-record evidence in this case allows us to carry out our obligation to make that same determination judicially, without violating the limitations imposed by Business and Professions Code section 23090.1. (Cf., e.g., *Nasha v. City of Los Angeles* (2004) 125 Cal.App.4th 470, 485 [22 Cal.Rptr.3d 772] [in administrative

mandamus proceeding, where the issue is "whether the administrative hearing was procedurally fair, 'the trial court may consider evidence not presented at the administrative hearing if the evidence addresses the petitioners claim that he or she was denied due process or a fair hearing at that hearing' "].)

### 4. *Determination*

Taken as a whole, the declarations do not affirmatively demonstrate that a report of hearing was distributed or otherwise made available to the decision maker in this particular matter. Furthermore, unlike the factual scenario in *Quintanar*, the Department has not conceded that the decision maker here "had access to the reports of hearing." (*Quintanar, supra*, 40 Cal.4th at p. 16.) The Department therefore characterizes Rondon's contentions as "unsupported speculation that the prosecuting attorney engaged in ex parte communication."

By the same token, however, the declarations do not foreclose the possibility that improper ex parte communication took place in this case. And given the circumstances presented here, we may assume that the Department did engage in the challenged practice in this case. For one thing, as a general matter, the Department's concession in *Quintanar* suggests a widespread agency practice of allowing access to such reports. (See *Quintanar, supra*, 40 Cal.4th at p. 16.) For another thing, and more specific to the case at hand, we agree with Rondon that Peirce's declaration is inadequate. On the critical issue of whether ex parte communication took place in this case, Peirce's declaration contains only his second hand information and belief that no such contact occurred. Presumably, the Department was capable of providing direct proof on that pivotal question, through Prosecuting Attorney Thomas Allen and/or the unnamed advisors/decision makers in the case.

In short, the Department has not offered any evidence that it did *not* engage in the challenged practice here, and the record before us does not foreclose that possibility. As was said in the *Howitt* case, "the burden is always on the party relying on [an ethical] wall to demonstrate its existence and effectiveness." (*Howitt v. Superior Court* (1992) 3 Cal.App.4th 1575, 1587 [5 Cal.Rptr.2d 196].) "As a practical matter, were the burden allocated otherwise, it would seldom if ever be possible for the opposing party to demonstrate that the lawyer in question had not been adequately screened." (*Ibid.*) "If the adviser has been screened, it should be relatively easy for [the agency, there the district attorney's office] to explain the screening procedures in effect. On the other hand, if there has been improper contact, it would likely be known only to the lawyers involved and perhaps to the [agency]. A

party challenging the dual representation would have virtually no way of obtaining evidence to demonstrate any impropriety." (*Ibid.*) "Similar pragmatic considerations are applicable here." (*Ibid.*)

In sum, the Department has failed to carry its burden of demonstrating that it employed an effective ethical wall in Rondon's case, despite having had the opportunity to submit evidence on the point.[4] We shall therefore assume as a factual matter that the Department's decision maker had access to the prosecuting attorney's report of hearing in this case.

### B. *Statutory Violations*

As explained by the California Supreme Court in *Quintanar*, the challenged practice implicates two related concerns: impermissible ex parte communication and illegal extra-record information. (*Quintanar, supra*, 40 Cal.4th at pp. 9–10.)

### 1. *Improper ex parte communications*

 In the words of the California Supreme Court, the APA does not "permit prosecutors and other adversarial agency employees to have off-the-record contact about substantive issues with the agency head, or anyone to whom the agency head delegates decisionmaking authority, during the pendency of an adjudicative proceeding." (*Quintanar, supra*, 40 Cal.4th at p. 10.) In the words of the Legislature: "While the proceeding is pending there shall be no communication, direct or indirect, regarding any issue in the proceeding, to the presiding officer from an employee or representative of an agency that is a party or from an interested person outside the agency, without notice and opportunity for all parties to participate in the communication." (Gov. Code, § 11430.10, subd. (a).)

---

[4] In that respect, this case is in a different posture from the situation presented in *Howitt*. (*Howitt v. Superior Court, supra*, 3 Cal.App.4th at p. 1587.) There, the court observed: "The record in this case contains no evidence of any procedure in the county counsel's office to screen lawyers who advise the appeals board from the advocacy functions of the office. We are nonetheless reticent to rely on this record in concluding that the county counsel's office has failed to meet its burden where the screening issue was not raised below and has only been highlighted as part of the process of appellate review. Under these circumstances, we believe it only fair to deny Howitt's petition without prejudice . . . [to] give county counsel's office the opportunity to make any showing it can to demonstrate that the Board's adviser has been adequately screened." (*Ibid.*) Here, by contrast, the parties raised the issue both in the administrative proceedings and in this court. The evidence submitted by the Department here is simply inadequate.

■ Applying that authority here, we conclude that the Department's practice of allowing its ultimate decision maker to have access to prosecuting attorneys' reports of hearing violates statutory prohibitions against ex parte communications.

### 2. Improper extra-record information

■ As the California Supreme Court has long held: "Administrative tribunals exercising quasi judicial powers which are required to make a determination after a hearing cannot act on their own information. Nothing may be treated as evidence which has not been introduced as such, inasmuch as a hearing requires that the party be apprised of the evidence against him in order that he may refute, test and explain it." (*La Prade v. Department of Water & Power* (1945) 27 Cal.2d 47, 51–52 [162 P.2d 13].) "The action of such an administrative board exercising adjudicatory functions when based upon information of which the parties were not apprised and which they had no opportunity to controvert amounts to a denial of a hearing." (*English v. City of Long Beach* (1950) 35 Cal.2d 155, 158 [217 P.2d 22].)

■ More recently—and in this specific context—the high court again stressed the importance of "record exclusivity. 'The decision of the agency head should be based on the record and not on off-the-record discussions from which the parties are excluded.' " (*Quintanar, supra*, 40 Cal.4th at p. 11.)

The Department's practice of allowing its ultimate decision maker access to prosecuting attorneys' hearing reports thus constitutes a second type of statutory violation, the use of extra-record information.

■ Furthermore, as recent case law explicitly confirms, the challenged ex parte practice violates the APA, regardless of whether the Board adopts the Department's decision. As the *Chevron* opinion states, "it is clear from the reasoning of the Supreme Court in *Quintanar* . . . that it does not make any difference that the Department decision maker in this case adopted rather than rejected the ALJ's proposed decision. The Department decision maker could have been influenced to affirm the ALJ by the ex parte communication from the Department's prosecuting attorney." (*Chevron, supra*, 149 Cal.App.4th at p. 133.)

## C. Remedy

Having concluded that the Department violated statutory requirements, we reach the final step in our analysis—determining the proper remedy. More precisely, we consider whether prejudice must be shown in order to warrant reversal of the Department's decision. We conclude that a showing of prejudice is not required.

In *Quintanar*, the high court rejected a similar claim of harmlessness asserted by the Department, articulating two reasons: "First, because the Department has refused to make copies of the reports of hearing part of the record, despite a Board order that it do so, whether their contents are as innocuous as the Department portrays them to be is impossible to determine. Second, although both sides no doubt would have liked to submit a secret unrebutted review of the hearing to the ultimate decision maker or decision maker's advisers, only one side had that chance. The APA's administrative adjudication bill of rights was designed to eliminate such one-sided occurrences. We will not countenance them here. Thus, reversal of the Department's orders is required." (*Quintanar, supra,* 40 Cal.4th at p. 17.)

 The second reason alone persuades us here. As long-standing California Supreme Court precedent teaches: "Administrative tribunals which are required to make a determination after a hearing cannot act upon their own information, and nothing can be considered as evidence that was not introduced at a hearing of which the parties had notice or at which they were present. [Citations.] The fact that there may be substantial and properly introduced evidence which supports the board's ruling is immaterial." (*English v. City of Long Beach, supra,* 35 Cal.2d at pp. 158–159.) "A contrary conclusion would be tantamount to requiring a hearing in form but not in substance, for the right of a hearing before an administrative tribunal would be meaningless if the tribunal were permitted to base its determination upon information received without the knowledge of the parties." (*Id.* at p. 159.)

In this case, based on the violation of statutory protections designed to ensure due process and a fair hearing, we conclude that "reversal of the Department's orders is required." (*Quintanar, supra,* 40 Cal.4th at p. 17.)

## DISPOSITION

The Department's decision to revoke Rondon's license is reversed and its request for sanctions is denied.

Elia, Acting P. J., and Duffy, J., concurred.

On June 11, 2007, the opinion was modified to read as printed above.